ROBERT CALVIN JONES, (Plaintiff) Respondent, v. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation, (Defendant) Appellant, No. 43188—258 S. W. (2d) 643.

Division Two, May 11, 1953.

Motion for Rehearing or to Transfer to Banc Overruled, June 8, 1953.

*Warner Fuller* and *Arnot L. Sheppard* for appellant.

1216

*Inman, Dyer, Gray & Dreher* and *Charles E. Gray* for respondent.

1218

LEEDY, P. J.—Action under Federal Employers' Liability Act, 45 U.S.C.A., § 51 et seq., for damages for personal injuries sustained by plaintiff while employed by defendant as a mail and baggage handler at Union Station in St. Louis. Verdict and judgment for plaintiff for $16,500, and defendant appeals. On the former appeal (242 S.W. 2d 473) judgment for defendant was reversed because of error in the instructions, and the cause remanded.

The injuries for which plaintiff sues allegedly resulted from an unusual, violent and sudden jerk of defendant's elevator on which he was descending, and [645] the sudden, unexpected and unusual ascent thereof while plaintiff was hanging helplessly from the station

platform and entrapped by a safety gate which he grabbed to avoid falling. The facts are stated in the opinion on the former appeal, which by reference we adopt, there being no material difference therein on either trial. The issue of the submissibility of plaintiff's case as one under the res ipsa loquitur doctrine was there adjudicated, the holding being that he was entitled to so submit it. The evidence on that issue was the same at the subsequent trial, but defendant nevertheless again urges that no such case was made under the evidence. We are entirely satisfied with our former holding on that issue, and so adhere to it.

Taking up defendant's assignments in the order in which they appear in the briefs, we come to that most vehemently pressed on oral argument, i. e., that the effect of the liberalized and expanded discovery provisions of the new Code of Civil Procedure (RSMo 1949, § 510.020, § 510.030, § 492.280, VAMS) is such as to render a plaintiff's knowledge or means of knowledge touching the facts out of which his injury arises equal, or superior, to that of a defendant; in other words, such provisions have destroyed the reason for the res ipsa rule, and hence the doctrine itself should be held to have been destroyed. This precise contention was ruled in the very recent case of Warner v. Terminal R.R. Assn., No. 43,093, decided April 13, 1953, by Division I, 363 Mo. 1082, 257 S.W. 2d 75. We are in accord with and follow the views there expressed in determining that issue adversely to the contention here made.

It is charged that plaintiff's testimony is contrary to physical facts in at least one vital respect, namely, that it appears from one of defendant's photographic exhibits that the construction of the elevator guard or gate is such that its bottom bar (which plaintiff testified he grasped when he lost his balance) lacked 13 inches of extending high enough to catch his hands between the elevator platform and the steel I-beam, or bottom of the passenger platform, as he testified. We are unwilling to say upon an inspection of the photograph that the jury was not at liberty to disregard the oral testimony of defendant's witness as to the correctness of that measurement, as testified by him.

Complaint is made respecting the examination of one of plaintiff's medical experts, Dr. Francis M. Barnes, Jr. The first of these is that the witness was permitted to answer a question based on the hypothesis that a portion of plaintiff's right leg was completely insensitive to pain, whereas, plaintiff's own testimony went no further than to show that he had suffered only partial loss of sensation at that point. The language of the offending question was: "* * * that there was this *lack of sensation* in his right leg area." The point of difference is whether the italicized language meant entire and complete want of sensation, or whether, as we think sufficiently appears

from the whole of the doctor's examination, and as the jury understood, the matter thus assumed was that of diminished or reduced, as distinguished from totally absent, sensation. The other matter complained of is the failure of the court to strike an answer of this witness in which he stated that the type of nerve injury found in the section of the fourth segment of plaintiff's spinal cord from which the nerve or nerves going down into the inside of his leg originate "may be due to some bone displacement in the spine, which might or might not be shown by X-ray. It might be due to a pinched nerve, which comes from the spinal cord at that level." Without extending this opinion by reproducing other relevant parts of the doctor's testimony, it may be said that they would satisfactorily establish that what the witness was referring to in the portion here attacked were pathological changes resulting in the damage he found, and not to causal connection between the accident and the injury sued for, as in Kimmie v. Terminal R. R. Assn., 334 Mo. 596, 605, 66 S.W. 2d 561, 565.

The next point grows out of the following answer given by Dr. Prenger, another of plaintiff's medical experts, to [646] a question calling for his opinion as to the cause of the disturbance of plaintiff's central nervous mechanism to which the witness had just testified: "My opinion would be that the cause is pressure, and the pressure is most likely a discogenic syndrome." It is claimed that this answer is so highly prejudicial as to have necessitated the declaration of a mistrial as requested by defendant, this upon the theory that such "evidence was clearly without the plaintiff's case as pleaded." When the objection was made, the trial court by prompt inquiry (made out of the presence and hearing of the jury) elicited from the witness the fact that discogenic syndrome is "a new terminology that is used for any irritation of the nerve roots that might be in and around the disc area," but not necessarily implying a ruptured disc. Following this clarification, the witness was thus admonished by plaintiff's counsel: "Any further testimony should not refer to a disc." Defendant's objection and motion to declare a mistrial were renewed and overruled. We are of the opinion that this showing does not warrant the inference that the use of the term "discogenic syndrome" was so inflammatory and prejudicial as to amount to placing before the jury the idea that a ruptured intervertebral disc was involved.

The next assignment is that, to defendant's prejudice, the court improperly limited the scope of the cross-examination of plaintiff. On his direct examination plaintiff complained of injury to his back (corroborated to some extent by his medical evidence), and on cross-examination defendant's counsel sought to elicit an admission that at the former trial he had made no such complaint. The ruling complained of stems from the following:

"Q. And, at the former trial, you complained of your legs, your right leg especially and your left leg somewhat; but, you didn't complain of your back.

"Mr. Gray [plaintiff's counsel]: I object to the use of the testimony at the former trial in this manner, unless there are specific questions and answers he wants to ask."

The objection was sustained, and a colloquy ensued between the court and counsel (out of the presence and hearing of the jury) from which the following appears: That the more specific ground of plaintiff's objection was that of "generalizing on what is in the record;" that defendant's insistence was upon its right to prove a negative—a significant omission in plaintiff's testimony on the former trial, and that the court's view was thus expressed: "What the record shows, it shows. * * * What it doesn't show, it doesn't show. You gentlemen can stipulate he made no complaints, if you choose to." Plaintiff's counsel replied that he could not so stipulate; that he would have to check the record because he did not recall, and observed, "Maybe it wasn't asked him; I don't know." Whereupon plaintiff's objection was again sustained.

We do not seriously regard plaintiff's contention that the matter first quoted above was not a question, but a mere statement of fact. There is not the slightest difficulty in concluding that it indicates a direct query, even if it is not in the form of a question. Nor is it bad as being argumentative, or assuming facts, as condemned in Lonnecker v. Borris, (Mo.) 245 S. W. 2d 53, 56. The vital issue of the extent of a plaintiff's injuries is one upon which there should be wide latitude in the matter of cross-examination. Self-impeachment is perhaps the most devastating form to be encountered. It is no answer to say that because defendant might have introduced the previous record, either by way of impeachment or as an admission against interest (and without laying a foundation therefor), and that it failed to do so, the error was cured, or rendered harmless. What could be plainer than that defendant was entitled to show (if it could) by admissions, elicited upon cross-examination of the plaintiff himself, of inconsistent testimony given by him at the two trials? The omission on the part of plaintiff to make claim of back injury upon the first trial would, in the absence of a satisfactory and convincing [647] explanation, be highly significant in the light of his present claim. And in any view that may be taken of the matter, it is obvious that the restriction thus placed upon the defendant's right of cross-examination was so severe and unwarranted as to render the questioned ruling prejudicially erroneous.

Numerous complaints are directed at the instructions, but none of them are of such a nature as to require extensive discussion. For example, it is urged that the court should have given defendant's

refused instruction No. 3. This is the very instruction for the giving of which the judgment in favor of defendant on the first trial was reversed. The same contentions now urged were there made, considered and determined, and this is enough to say on the subject. What was said in Winters v. Terminal R. R. Assn., 363 Mo. 606, 252 S. W. 2d 380, 387, effectively disposes of the objections raised to paragraph one of plaintiff's main instruction (summarized in the opinion on the former appeal, 242 S.W. 2d 473, 478) as being too general, confusing and misleading, stating mere abstract legal principles, failing to require findings of constitutive facts of negligence, and giving the jury a roving commission. It has been held that instructions similar to plaintiff's No. 4 on sustaining the burden of proof (also challenged) are not so prejudicially erroneous as to require the granting of a new trial. Warning v. Thompson, (Mo.) 249 S.W. 2d 335, 343; Winters v. Terminal R. R. Assn., supra; Venditti v. St. Louis Public Service Co., 362 Mo. 339, 240 S.W. 2d 921, 927.

Under the holding on the former submission with respect to the inapplicability of the fellow servant rule in an action under FELA, and the further holding that an employe's negligent intentional act is no defense to an action against an employer for injuries to another employe, and does not render the res ipsa doctrine inapplicable, it is apparent that no error was committed in refusing defendant's instruction under which it would have been absolved if the jury found "that at the time of the injury to plaintiff, the elevator was caused to go down, up and down again, by the intentional act of someone who pulled the chain which set the elevator in motion."

Defendant's refused instruction No. 6 would have directed a verdict upon the finding "that plaintiff was injured as a direct result of taking hold of any part of the elevator gate without any necessity for so doing." Defendant seeks to justify the instruction on the ground that under its defense of no abnormal or unusual movement of the elevator, there could not have been any necessity for the plaintiff to have grasped the elevator guard or gate as it rose. Apart from failure to negative any negligence on defendant's part, the instruction would have been misleading as in practical effect authorizing a verdict for defendant even though plaintiff's negligence merely contributed with that of defendant, and hence in violation of the act under which the action was brought, 45 U.S.C.A., § 53.

Defendant complains of the refusal of its instruction No. 13, which told the jury that if it should find in favor of plaintiff, then in determining his damages it should "take into consideration the fact that not all persons live to the age of expectancy, and that this is particularly true in the case of hazardous occupations, if you believe the plaintiff's occupation was hazardous. If you take into consideration also the fact that Mr. Jones might not have worked during all the years of his expected life, and that his earnings might not have

1224

remained stationary and therefore the reasonably to be expected earnings might have varied or diminished in the future.'' The instruction is a counterpart of that under consideration in Louisville & N. R. Co. v. Botts, 173 F. 2d 164, 169-170, a case determined by the United States Court of Appeals for this, the 8th Circuit. While it was there held that the giving or refusal of the instruction in the situation there presented was wholly for the trial court's discretion, in reaching that conclusion it took occasion to say that the matters enumerated in the instruction ''are such commonplace facts, of daily consciousness, that they do not need to be [648] made a matter of judicial fiat.'' The case of Thompson v. Camp (6), 163 F. 2d 396, 403-404, upon which defendant in the case at bar relies, was distinguished, and what was said in that connection is here applicable.

For the error in unduly restricting the cross-examination of plaintiff, the judgment is reversed and the cause remanded. All concur.