Don V. DETRICH et al., Respondents,

v.

MERCANTILE TRUST COMPANY et al.,
Defendants,

Service Club for the Blind, Inc., et al.,
Appellants.

No. 45166.

Supreme Court of Missouri.

Division No. 2.

July 9, 1956.

Bernard J. Huger, Walter H. Pollmann, William O. Cramer, St. Louis, for appel-lants, Sisters of St. Mary, a Corporation, and Service Club for the Blind, Incorporated.

Cox, Cox & Cox, Harvey B. Cox, Harvey B. Cox, Jr., William A. Moffitt, Jr., St. Louis, for respondents.

BARRETT, Commissioner.

In this conventional action to contest the will of Miss Elizabeth J. Detrich, a jury, by a nine to three verdict, found that the testatrix was of unsound mind on February 19, 1951, and, consequently, that the document was not in fact her last will and testament. The principal beneficiaries and proponents of the will have appealed from the final judgment entered in accordance with the verdict.

■ Miss Detrich was a spinster, aged sixty-seven years, when she executed her will on the 19th day of February 1951. She bequeathed the sum of one dollar to her brother and to the children of her deceased brothers, thereby, in effect, disinheriting her only surviving heirs. There were specific bequests of jewelry and personal property of but little value and two cash legacies of $500 each to friends and advisers. She gave one third of the residue of her estate to the Service Club for the Blind and two thirds of the residue to the Sisters of St. Mary for the benefit of the Firmin Desloge Hospital. According to the inventory, Miss Detrich's estate, consisting solely of personal property, is now of a value in excess of $35,000. The respondent-contestants are her brother and nieces and nephews and the proponent-appellants are the Service Club for the Blind and the Sisters of St. Mary and, obviously, "the amount in dispute * * * exceeds the sum of seventy-five hundred dollars", Const.Mo. Art. 5, § 3, V.A.M.S., and jurisdiction of the appeal is appropriately in this court. Aaron v. Degnan, Mo., 272 S.W.2d 216, 217; Rex v. Masonic Home, 341 Mo. 589, 108 S.W.2d 72.

The appellants contend that the trial court erred in refusing to sustain their motions for directed verdicts because there was no substantial evidence tending to show that Miss Detrich lacked "general testamentary capacity" at the time she executed the will. In this connection it is urged that the "uncontroverted" evidence demonstrated that the testatrix understood the ordinary affairs of life, the nature and extent of her property, the natural objects of her bounty and that she was making a gift of her property to the appellants when she executed the will and, therefore, the "Missouri standard of testamentary capacity" was conclusively established. Also in this connection it is urged that evidence of her condition almost three years prior to the execution of the will was so remote as to be wholly lacking in probative force and that other circumstances relied upon were not inconsistent with sanity and were not of such force that lay witnesses should be permitted to express an opinion to the contrary. It is also said that medical and lay testimony that Miss Detrich "might have lacked testamentary capacity" when she executed the will was not so substantial in probative force as to warrant the submission of the issue to the jury. On the other hand, the respondents contend that their motions for verdicts should have been sustained because the proponents failed to meet the mandatory requirements of V.A.M.S. § 468.150 in that there was no showing that at the very time Miss Detrich signed her will she knew and understood it was a will, and in that she did not disclose to the three witnesses that the paper she was signing was a will. In so contending, despite the great mass of will contest litigation, the parties have cited cases without discrimination as to what occurred in the trial court or what the precise issues were either in the trial court or upon appeal. It makes a vast difference in the problems upon appeal whether there was a judgment sustaining the will or one rejecting it. Here there was a verdict and judgment rejecting the will and the evidence is neces-

sarily viewed favorably to that finding. Compare Dowling v. Luisetti, 354 Mo. 514, 173 S.W.2d 381 and Berkemeier v. Reller, 317 Mo. 614, 296 S.W. 739.

In the latter connection, as to due execution of the will and compliance with the mandatory requirements of V.A.M.S. § 468.150, there was in fact no issue made between the parties, no instructions requested or given, as to whether the will had been properly executed as was the case in Morton v. Simms, Mo., 263 S.W.2d 435. Compare Ray v. Walker, 293 Mo. 447, 240 S.W. 187. No one questioned the genuineness of Miss Detrich's signature or the signatures of the three witnesses, the attestation clause was complete and its recitals were substantial evidence of the facts therein stated and the respondents were not entitled to a directed verdict by reason of the appellants' failure to sustain their burden of proof upon this issue. Morton v. Simms, supra; Burkland v. Starry, 361 Mo. 348, 234 S.W.2d 608, 40 A.L.R.2d 1217; Hennings v. Hallar, 347 Mo. 827, 149 S.W. 2d 338; annotation 40 A.L.R.2d 1223.

In considering the appellants' contention that there was not sufficient, probative evidence of Miss Detrich's mental incapacity to make a valid will in February 1951, it is not necessary to set forth the evidence as to her definite personality changes in 1947 and finally her terrifying delusions and threats, if not attempts, of suicide. On February 2, 1948, she was committed to Malcolm Bliss Hospital. She left the hospital June 9, 1948, but a most competent doctor diagnosed her illness as "psychosis with cerebral arteriosclerosis." "A psychosis," the doctor said, "implies that the individual is unable to manage their own affairs and have poor contact with reality." It was the doctor's further diagnosis that Miss Detrich's psychosis was due to hardening of the arteries of the brain—that there was definite damage to the brain. She also suffered from Parkinson's disease. She was given twenty shock treatments, not as a cure, but to modify the symptoms of her mental illness, particularly her depression

and suicidal propensities. She showed little or no improvement, however, and again attempted to commit suicide while in a convalescent ward.

In contending that the circumstances adduced by the contestants were not of such probative force as to authorize a jury to find that Miss Detrich was of unsound mind three years later, February 19, 1951, and that their evidence conclusively met the Missouri standard, Rex v. Masonic Home, supra, and established her capacity, the appellants have not given full force to the weight of the respondents' evidence and especially to the medical evidence which, incidentally, stands undisputed. The appellants did offer evidence of her sanity and capacity when she executed the will, but the evidence was not conclusive. It was the opinion of the doctor who treated her in 1948 that her delusions resulted from damage to the brain and "brain cells do not ever regenerate," that her condition was permanent and progressive—was "not reversible, that there was no way of curing." Miss Detrich left the hospital and institutional care against the advice of the doctor. The doctor did not again see Miss Detrich after she left the hospital in June 1948 but as to her mental condition in February 1951 said, "I would have an opinion, but I wouldn't be sure. * * * I would say that she was still ill at that time. * * * since it was an organic brain disease that could not improve, and she was definitely of unsound mind in 1948, I would say she continued so." From this testimony and the nature of her illness, that it was permanent and progressive, "not reversible," there was a presumption that her incapacity continued down to and including the making of the will. Ambruster v. Sutton, 362 Mo. 740, 244 S.W.2d 65; Byrne v. Fulkerson, 254 Mo. 97, 162 S.W. 171; 2 Page, Wills, Sec. 772, p. 504. It is in this important respect that the cases relied upon by the appellants, instances of temporary delusion and of the physical and mental weaknesses attendant upon old age, Nute v. Fry, 341 Mo. 1138, 111 S.W.2d 84,

are distinguishable from the facts and circumstances of this case. There is some corroboration of the doctor's evidence and opinion as to the permanency and continuance of her mental illness for the years 1949 and 1950 in her rambling, accusatory letters written in those years. While the appellants' testimony, all from laymen, tends to show that Miss Detrich was sane, or of sufficient mental capacity to execute a will, on February 19, 1951, the contrary inference was also supported by substantial evidence and the trial court appropriately submitted the issue to the jury.

The essentially meritorious question upon this appeal is whether the court prejudicially erred in giving the jury, at the request of the contestants, instruction eleven:

"The Court instructs the jury that proof of insanity prior to the date of the alleged execution of a purported will, which said insanity is permanent and progressive in its nature, raises a presumption of continuity which it is incumbent upon proponents of a will to rebut."

In defense of the instruction it is urged, as indicated, that there was evidence that Miss Detrich's mental condition was permanent and progressive and, therefore, a presumption of the continuance of her condition arose and it was proper to so inform the jury. True, in view of the contestants' evidence, the instruction may be a correct abstract statement of the law, a physical or mental condition, permanent in nature, once shown to exist will presumably continue, and the burden is upon whoever denies the condition to overthrow the presumption. Canty v. Halpin, 294 Mo. 118, 242 S.W. 97, 102; Dunkeson v. Williams, Mo., 242 S.W. 653, 658. Furthermore, it is not necessarily error to give correct abstract instructions or statements of law unless they are confusing or misleading and, therefore, prejudicial. Benham v. McCoy, Mo., 213 S.W.2d 914, 920. The practice, however, especially "when unaccompanied by 'further

call for a finding by the jury of all the facts required by law to justify a verdict' ", has its hazards. Cuddy v. Schenewark, Mo., 231 S.W.2d 689, 691. The mere fact that a statement or language is found in the opinion of an appellate court, regardless of how authoritative and wise, does not authorize its inclusion in an abstract instruction. In re Harlow's Estate, 239 Mo.App. 607, 623, 192 S.W.2d 5, 14; 88 C.J.S., Trial, § 337(c), p. 887. As applied to presumptions: "There are many expressions used in appellate opinions which are not proper for incorporation in instructions to juries. In passing upon motions for directed verdicts courts often say that plaintiff has made a prima facie case, or that certain facts authorize a presumption of negligence; but trial courts frequently may not use the same language, in instructions which submit to juries the finding of facts." Anderson v. Glascock, Mo.App., 271 S.W.2d 243, 248. The precise point is illustrated by what we have said and done in considering the sufficiency of the contestants' evidence to sustain the jury's finding of incapacity on February 19, 1951. Buford v. Gruber, 223 Mo. 231, 122 S.W. 717. It is partially for this reason that evidence as to the testatrix' mental condition in 1948 is admissible and of probative force as to her condition in 1951,—if the proof is of a permanent, progressive malady there is a presumption of continuity which the proponents must rebut. Heflin v. Fullington, Mo., 37 S.W.2d 931, 935.

The fallacy of the contestants' argument and the giving of this particular instruction comes about, in part, from a lack of appreciation of the nature and meaning of presumptions and their place and function in the law of evidence and the trial of cases. "Presumptions are aids to reasoning and argumentation, which assume the truth of certain matters for the purpose of some given inquiry. They may be grounded on general experience, or probability of any kind; or merely on policy and convenience. On whatever basis they rest, they operate in advance of argument or evidence, or irrespective of it, by taking something for granted; by assuming its existence. *When the term is legitimately applied it designates a rule or a proposition which still leaves open to further inquiry the matter thus assumed.* * * * Their effect results necessarily from their characteristic quality,—the quality, namely, which imputes to certain facts or groups of fact a prima facie significance or operation. In the conduct, then, of an argument, or of evidence, they throw upon him against whom they operate the duty of meeting this imputation. Should nothing further be adduced, they may settle the question in a certain way; and so he who would not have it settled thus, must show cause." Thayer, Preliminary Treatise On Evidence, pp. 314, 336. The presumption involved here is one of fact based on the common experience of mankind, it is, however, a rebuttable presumption and the inference flowing from the presumption "may or may not be drawn by the trier of the fact as it may see fit." In any event "Such presumptions should not be submitted to the jury in such a way as to compel them to draw the inference or inferences although they remain in the case throughout." State ex rel. Nelson v. Hammett, Mo.App., 203 S.W. 2d 115, 123. As indicated, the fact issue in this case was the mental capacity of Miss Detrich on February 19, 1951, the contestants' evidence tended to show that she was not sane and lacked testamentary capacity on that date, the proponents' evidence tended to show that she was sane and possessed of the requisite mental capacity. In short, the testimony was in direct conflict and contrary inferences were permissible and that was the precise issue submitted to and determined by the jury.

The point involved here and the vice of this particular instruction is illustrated by Morton v. Heidorn, 135 Mo. 608, 37 S.W. 504, 505. That was a will contest in which the principal issue was undue influence. The proponents of the will offered and the court gave an instruction which, in substance, informed the jury that if they found

that the testator signed, published and declared the will and was of sound mind " 'then said instrument of writing was and is presumed to be his free and voluntary act; and you cannot, in such case, find against said will on the ground of undue influence, unless the charge of undue influence has been proven * * * by a preponderance of the evidence.' " The court said, "When the cause was submitted to the jury, there was no presumption of the law that the document was testator's 'free and voluntary act.' There was evidence before them which all the parties and the court alike, interpreted as tending to prove undue influence. Both adversary parties asked and obtained instructions on that theory. In that state of the case, it was not proper to give proponents of the will the benefit of a so-called 'presumption,' which is merely one of fact, applied in the absence of any evidence permitting a different inference." "The law presumes that a testator is of a sound and disposing mind until there is evidence tending to overcome this presumption", Lindsey v. Stephens, 229 Mo. 600, 614, 129 S.W. 641, 644, but, when that is the issue and the evidence conflicts, the contestants would certainly protest the giving of an abstract instruction to that effect. Weaver v. Allison, 340 Mo. 815, 102 S.W.2d 884, 10 A.L.R. 672.

■ In the circumstances of this case this particular abstract instruction was demonstrably confusing and misleading and in view of the evidence and the precise issue involved so prejudicial to the proponents' right to a fair trial as to demand the granting of a new trial. Morton v. Heidorn, 135 Mo., loc. cit. 617–618, 37 S.W. loc. cit. 506. Because of the probable prejudicial effect of instruction eleven the judgment is reversed and the cause remanded.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.