**Mrs. W. L. SNEAD, Respondent,**

v.

**Donald SENTLINGER, Appellant,**

**Johnny E. Paul, Defendant.**

**No. 47010.**

Supreme Court of Missouri,

Division No. 2.

Sept. 14, 1959.

Charles D. Tudor, A. L. Shortridge, Joplin, for appellant.

Vernie R. Crandall, Frieze & Crandall, Arkley W. Frieze, Carthage, for respondent.

BOHLING, Commissioner.

Mrs. W. L. Snead recovered a verdict and judgment of $13,000 against Donald Sentlinger and Johnny E. Paul for the wrongful death of W. L. Snead, her husband. Donald Sentlinger has appealed. His liability was based on the principle of respondeat superior; and his sole contention is that his motions for a directed verdict at the close of respondent's case and at the close of all the evidence should have been sustained on the ground that his employee, Paul, had so deviated from the scope of his employment that whether Paul was acting within the scope of his employment was a question of law and not a question of fact. We have for review only the motion filed at the close of all the evidence as, by proceeding with the evidence, appellant waived his motion filed at the close of respondent's evidence. Stephens v. Kansas City Gas Co., 354 Mo. 835, 191 S.W.2d 601, 607[12]; Pieper v. Lewis, Mo. App., 321 S.W.2d 4[1].

The collision involved occurred at 20th and Sergeant streets, Joplin, Missouri, a few minutes before 5:00 p. m., December 17, 1956. Twentieth is an east-west through street at this intersection. Sergeant is a narrow street, restricted to southbound

traffic between 20th and 21st streets, with stop signs protecting traffic on 20th street. As W. L. Snead, westbound, was crossing this intersection in his Chevrolet automobile at about 30 m. p. h., a 1952 G.M.C. 2½ ton empty dump truck, owned by appellant and operated by Paul, was northbound on Sergeant at an estimated speed of 50 to 60 m. p. h. and, without stopping for the intersection, crashed into the side and threw Mr. Snead out of the Chevrolet and so injured him that he died within a very short time. The traffic officer testified Paul was intoxicated. Paul pleaded guilty to manslaughter, and was granted a parole.

Appellant lived in Webb City. He contracted to haul mine rock ore for Russell Brock from about eight miles north of to a mill in Webb City. He had three employees, we understand truck drivers. He was severely injured on November 21, 1956, and was confined at St. John's Hospital, 22nd and Jackson streets (two blocks south and one block west of the scene of the collision), for eight weeks.

Defendant Paul, 18 years old, was a brother of Mrs. Sentlinger. He lived in Lincoln, Nebraska, the first part of November, 1956. About the latter part of November, Paul moved to his mother's in Webb City and started to work for appellant hauling mine rock ore and making minor repairs on the truck he used. He received $1.25 a load for hauling and extra pay for minor maintenance work on the truck. Major repairs on the truck were made at the General Truck Terminal at 16th and Range Line (highway No. 71), a north-south road on the east side of Joplin, and about thirty-six blocks east and three blocks north of the scene of the collision. Webb City is less than eleven miles north of Joplin. The mine closed down one Friday morning. Paul took the truck to the General Truck Terminal Friday, December 14th, for major repairs.

Monday afternoon, December 17th, Mrs. Sentlinger drove Paul to the General Truck Terminal and then went to see appellant.

About 2:00 p. m. Paul drove the truck to his mother's home. He remained there about ten minutes. The engine was not idling properly. He drove the truck to a garage rented by drivers to work on their trucks in Webb City to adjust the carburetor and leave the truck for the night because it was cold. Seven or eight men were there and he could not take his truck in the garage. He waited to get his truck in. The men started taking up a collection to buy liquor and he volunteered to and purchased a fifth of whiskey. He had three drinks, highballs. Later he asked Fred Brock to drive him to Joplin to see appellant. He testified he did not remember anything from that point on until he found himself in the Freeman Hospital at 20th and Sergeant after the accident.

Appellant states respondent is entitled to the most favorable view of the evidence and the inferences to be drawn therefrom. Respondent offered in evidence certain portions of depositions given by Paul and appellant as admissions against interest. She did not put Paul or appellant on the stand.

Appellant testified at the trial that Paul "was to carry on the general conduct of operations" in witness' business after witness was injured and then stated "I never told him so." From his deposition: "Q. Did you tell him before you went to the hospital? A. Whenever I did. I imagine I did." And, at the trial: "Q. Was he [Paul] to carry on your business for you? A. At what time?

"Q. After you were injured and up to the time in December, on the 17th, 1956. A. Yes.

"Q. From and after November 23, 1956, he [Paul] pretty well had full charge and control of your truck and the business operation, did he not? A. Yes." The truck was too large and its operation too expensive to use as a pleasure vehicle. Paul was to use the truck for any purpose to make money but not for his own personal use. He was authorized to keep the truck at his home.

Paul testified that appellant told him to take over the truck and run the business; to work the truck like it was his own. No other person directed his work. He went to the hospital to see appellant and would tell him what was going on in the business and appellant would tell him if he had anything to do. Usually there was business to talk about and he told appellant about it. They talked business whether appellant says they did or not. Paul stated in his deposition that he was working for appellant on December 17, 1956, but testified at the trial he thought this answer was wrong, although he had read the deposition before he signed it.

After the accident Paul continued to work for appellant until the mine shut down in February or March, 1957.

■ Proof that the automobile involved in a collision was owned by and that its operator was in the general employment of the defendant gives rise to and is the bare minimum for a procedural presumption that the operator was acting within the scope of his employment at the time; and if there is no evidence for the plaintiff other than this bare minimum, the presumption disappears upon defendant's introducing substantial controverting evidence. State ex rel. Waters v. Hostetter, 344 Mo. 443, 126 S.W.2d 1164, 1166; Brown v. Moore, Mo., 248 S.W.2d 553, 557. "But if there be *other* evidence, it may aid that required to raise the presumption, and the whole considered together sometimes may be sufficient to support the necessary valid inference, even though the *presumption* has been overcome by defendant's evidence." State ex rel. Waters v. Hostetter, supra [344 Mo. 443, 126 S.W.2d 1166]. Berry v. Emery, Bird, Thayer Dry Goods Co., 357 Mo. 808, 211 S.W.2d 35, 42[8, 9].

Appellant stresses Guthrie v. Holmes, 272 Mo. 215, 198 S.W. 854, 859, 860; Beckwith v. Standard Oil Co., Mo., 281 S.W.2d 852, 855; Miceli v. Williams, Mo.App., 293 S.W.2d 136, 139; Brown v. Moore, Mo., 248 S.W.2d 553, 557, and Klotsch v. P. F. Collier & Son Corp., 349 Mo. 40, 159 S.W.2d 589, 594[6]. In the Guthrie, Beckwith and Klotsch cases plaintiff called the employee involved and his testimony dispelled the procedural presumption under review. In each of appellant's cases it appears that plaintiff had the bare minimum for invoking the presumption. The Beckwith case fell within the rule, among others, that the principle of respondeat superior does not generally apply where one employee is accommodating a coemployee by driving him home in the employer's automobile, and the Miceli case fell within the general rule that a servant is not engaged in his master's business while traveling to and from meals (the servant was using the master's car in his absence and without his consent). In the Brown case, defendant's evidence, which was not questioned on the issue in any manner, established that the employee, who had permission to use the employer's car for personal purposes, was on the return trip of a three mile deviation from the employer's business to purchase a case of beer, found in the car after the collision, for a private party that evening.

■ Appellant's cases would be more in point had Paul's authority been limited to operating the truck between the mine and the mill and to the General Truck Terminal for major repairs. Under the instant record Paul had full authority to act generally for appellant in the conduct of appellant's business. He was appellant's alter ego in this respect. Paul's attempt to change his deposition and his conclusion that he was not working for appellant on the day of the accident, evidently because he was not expecting pay for the day, does not change the fact that he was acting for appellant in driving the truck from the General Truck Terminal to his mother's and then to the garage to adjust the carburetor whether he received compensation therefor or not. Paul affirmatively testified, notwithstanding appellant's testimony,

that appellant and he usually talked about the business when he went to the hospital. He remembered asking Fred Brock on the afternoon of the accident to drive him to the hospital at Joplin to see appellant, but did not remember anything thereafter until he awakened in the hospital that night. We do not find in the instant record testimony tending to establish that the precise purpose for which Paul was using appellant's automobile at the time of the collision was not within the scope of his authority. In appellant's cases there was direct testimony that the employee's purpose was outside the scope of his authority. See Rosser v. Standard Milling Co., Mo., 312 S.W.2d 106, 112[8], holding the presumption had not been dispelled. The operation of the truck was too expensive for it to be used as a pleasure vehicle and Paul was not authorized to and did not use it for personal purposes. He worked for appellant prior to, on, and after the day of the collision. The jury could infer that he was a faithful employee. He was only two or three blocks from St. John's Hospital and traveling in the direction of Webb City at the time of the collision. The jury could infer that Paul used the truck on the occasion in question to drive to the hospital where appellant and he usually talked about appellant's business. The fact that he had had three highballs or failed in his mission of seeing appellant would not change the purpose of his trip. We hold the instant record sufficient for the inference that Paul was upon a mission connected with appellant's business at the time involved. Mauzy v. J. D. Carson Co., Mo.App., 189 S.W. 2d 829, 831[1–5]; Berry v. Emery, Bird, Thayer Dry Goods Co., 357 Mo. 808, 211 S.W.2d 35, 42[9]; State ex rel. Waters v. Hostetter, 344 Mo. 443, 126 S.W.2d 1164, 1166; Waters v. Hays, Mo.App., 130 S.W. 2d 220, 223.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.