Marjorie M. CHANDLER, Respondent,

v.

NEW MOON HOMES, INC., Appellant.

No. 52704.

Supreme Court of Missouri,
En Banc.

Sept. 11, 1967.

E. J. Murphy, Butler, William J. Cason, Clinton, for plaintiff-respondent.

A. Warren Francis, Lloyd A. Hamrick, Roger J. Staab, Kansas City, Robert L. Spurrier, Butler, for defendant-appellant.

SEILER, Judge.

This is an action for personal injuries arising out of an automobile collision. From a verdict and judgment for plaintiff for $5,000 defendant appealed to the Kansas City Court of Appeals, which affirmed the judgment, and on defendant's application the case was by our order transferred here, largely because of the general interest involved in the holding of the Court of Appeals that proof by plaintiff of ownership by defendant corporation of the vehicle involved was sufficient to raise the presumption that the tractor unit was then and there being used in the defendant's business and that unless defendant offers evidence otherwise, the presumption continues and will finally support a verdict and judgment.

At about 3:30 p. m. on May 14, 1963, the plaintiff, Marjorie M. Chandler, was riding as a guest passenger in the right front seat of a 1959 Ford sedan, owned and driven by her husband, Russell Henry Chandler. The Chandlers were dairy farmers and resided about four miles south of Butler in

Bates County, Missouri. They were on their way home, proceeding in a southerly direction on U.S. Highway 71. About three miles south of Butler, Highway 71 is intersected by Highway 52, which runs east. Abutting to the north and east of this intersection is a filling station and restaurant. Highway 71 is paved and carries two lanes of traffic, one north and one south. The weather was fair and the surface was dry.

Mr. and Mrs. Chandler said they had been proceeding south at about 65 miles per hour, but slowed down 200 to 300 feet from the north edge of the driveway to the restaurant, where they planned to stop for coffee, as was their custom. Mr. Chandler said his brakes were good and his signal lights were working. He signaled for a left-hand turn, did not see any northbound vehicle approaching when he got to the north edge of the restaurant parking area and made his left turn. It was not established where he turned on his signal with relation to where he turned or exactly what he did about looking south before turning or how far he could see to the south. Mr. Chandler continued his description of what then occurred: "When I had my car approximately half way off of the highway I seen this truck coming at me from the south." He estimated the truck's speed at this moment at 70 miles per hour (another witness placed the speed of the truck at "at least 70 miles") and his own at 5 to 10 miles per hour. The back half of his automobile was then "approximately middle of the northbound lane of traffic". He said the truck's course of travel was "coming off of the highway", between 100 to 150 feet away, closer to 100, when he first saw it. He testified further: "Well, I started to speed up first, but then I seen he was coming on off of the highway and I set my brakes." "He hit us right on the right front corner of the car." Mr. Chandler said the front

of his car was 18 to 20 feet off the east edge of the pavement and no portion of his car on the highway when the collision with the truck took place; that his car was practically at a standstill. The Ford spun around, rolled north and stopped on the shoulder of the highway. The truck was a 1963 International tractor unit with a shortened wheel base. A witness testified the truck left the slab at the intersection. It started rolling or somersaulting on impact, overturning three times and coming to a stop in the east ditch, next to the fence some 20 to 30 feet off the highway.

Ronald Kahn, manager of Kahn Chevrolet Company, Butler, Missouri, where the tractor was towed and stored, said the drive shaft and wheel base had been shortened, which made the vehicle top-heavy and hard to handle under braking. He said he was familiar with such vehicle modifications and had driven such a vehicle;[1] that the wheel base is shortened to enable such vehicles to transport a long load, that this was "a trailer-hauling vehicle." Kahn testified without objection that according to his records "New Moon, Incorporated, 1515 East 4th Street, Grand Island, Nebraska" was the owner of the vehicle. Plaintiff's exhibit 7, the repair invoice, was so made out, with a wrecker service charge of $30.00 and storage charges of $75.00 and was marked "Paid". Witnesses testified they observed, and the snapshot exhibits of the tractor show, the words "New Moon" on the doors and rear of the tractor.

The defendant offered no testimony.

■ Defendant contends its motion for directed verdict should have been sustained because no showing was made the driver was guilty of any negligence. Excessive speed was the only ground on which plaintiff submitted. From the evidence the jury could reasonably have believed the northbound tractor unit approached the intersec-

---

1. The court in its discretion ruled Mr. Kahn qualified as an expert to testify on these matters. His statements were neither denied nor really disputed and we do not consider there was any abuse of discretion by the trial court in permitting the testimony.

tion at a speed of 70 miles per hour, left the slab on Highway 71 at the junction, travelled across the parkway area, hit plaintiff's vehicle well out on the east shoulder, and then overturned three times before coming to rest in the ditch. This authorized submission of the excessive speed issue to the jury and defendant's contention is overruled.

Defendant says further there was no evidence that the operator of the tractor unit was "an agent" of defendant and "acting within the scope of his employment at the time of collision". Another assignment presents this same question by alleging error in giving Instruction No. 3, which submitted "scope of employment" to the jury—defendant says, without evidence.

■ The plaintiff offered no evidence as to either the status or the mission of the driver of the truck. The only evidence as to his identity comes from the defense attorney's inquiry of Dr. Ronald, coroner of Bates County (who was also plaintiff's treating doctor) whether he had occasion "to examine the other driver involved in the collision of May 14th, 1963, Mr. George H. Gallagher". The coroner responded that he had examined this person whom defendant's attorney had named as Gallagher, but upon objection, the court refused the answer. Plaintiff's main instruction referred to the driver of the truck as Gallagher. Defendant's answer denied generally plaintiff's allegations that the truck at the time was in charge of defendant and was being operated by its agent, servant and employee. The plaintiff at no time made an effort through interrogatories or by deposition to determine if the truck driver was defendant's employee or to determine if he was at the time acting within the scope of his employment. Of course, unless the negligent operation of the truck by the driver at the time, whatever his name, was within the scope of his employment, defendant

would not be liable. This is an essential element of plaintiff's case which she carries the burden of proving by evidence.

The record shows only the following: (1) the vehicle in question was being operated as a tractor unit at the time of the collision, without any trailer or load; (2) the words or sign name of "New Moon" were stamped or painted on two of the truck doors and on the rear end, and the garage owner testified without objection that according to his records, "New Moon, Incorporated, 1515 East 4th Street, Grand Island, Nebraska," was the owner; (3) the towing and storage were billed to and apparently accepted by the defendant company; (4) defendant's attorney referred to "George H. Gallagher" as driver of the truck at the time of the collision.

It appears, therefore, that plaintiff's proof on this essential element consists only of whatever presumption, if any, arises from proof that defendant company owned the vehicle. We find no proof, or showing, or definite affirmative evidence that Gallagher was an employee of any sort of defendant company at the time of the accident or if he were, that he was within his scope of employment. Plaintiff says that proof of truck ownership is sufficient to raise the presumption that defendant not only owned the truck, but that it was then and there being used in defendant's business, and that unless defendant offers evidence otherwise, this presumption continues, and will finally support a verdict and judgment. Defendant disagrees.

The proposition enunciated in Guthrie v. Holmes (banc) 272 Mo. 215, 198 S.W. 854, that proof of ownership of the vehicle together with proof that the driver was in the general [2] employ of the owner raises the presumption that the driver was acting within the scope of his employment, has been reaffirmed many times by this court, Bond v. St. Louis-San Francisco Ry. Co.,

2. By "general", of course, is not meant employment limited to a superior rank, such as a general agent or a general manager. It is used in the sense of not being limited to a particular class, type, or field of employment.

315 Mo. 987, 288 S.W. 777, 782; State ex rel. Kurz v. Bland (banc), 333 Mo. 941, 64 S.W.2d 638, 641; Collins v. Leahy, 347 Mo. 133, 146 S.W.2d 609; Berry v. Emery, Bird, Thayer Dry Goods Co., 357 Mo. 808, 211 S.W.2d 35, 42; Rosser v. Standard Milling Company (Mo.Sup.), 312 S.W.2d 106, 111; Snead v. Sentlinger (Mo.Sup.), 327 S.W.2d 202, 205; Terminal Warehouses of St. Joseph, Inc. v. Reiners (Mo.Sup.Div. 1), 371 S.W.2d 311, 316.

In Hays v. Hogan, 273 Mo. 1, 200 S.W. 286, L.R.A.1918C, 715, decided the same year as Guthrie, the court rejected the contention that ownership of an automobile by the father together with the fact it was being driven by the son with the father's consent was sufficient to raise a presumption the son was acting as agent and servant and within the scope of his authority. In Berry v. Emery, Bird, Thayer Dry Goods Co., 211 S.W.2d l. c. 42, the admitted facts that the truck belonged to the defendant transfer company and that the driver was in its general employ were declared by the court to be *"barely sufficient* in themselves to give rise to the procedural presumption that defendant Bailey, who was driving the truck, was acting within the scope of his employment when plaintiff was injured and to thus make out a prima facie case under the doctrine of respondeat superior" (emphasis added). In Snead v. Sentlinger, supra, 327 S.W.2d l. c. 205, the court said, "Proof that the automobile [note: it was a dump truck] involved in a collision was owned by and that its operator was in the general employment of the defendant gives rise to and is the *bare minimum* for a procedural presumption that the operator was acting within the scope of his employment at the time; and if there is no evidence for plaintiff *other than this bare minimum*, the presumption disappears upon defendant's introducing substantial controverting evidence" (emphasis added).

However, from time to time it has been asserted that proof of ownership alone is sufficient to raise the presumption the driver is the agent of the owner and acting within the scope of his authority. The authority usually given for this proposition is Barz v. Fleischmann Yeast Co. (banc), 308 Mo. 288, 271 S.W. 361. There the evidence showed the truck was owned by defendant, had defendant's name on the side and was driven by an employee of the defendant, although defendant contended the employee was using the truck during his noon hour without permission and not on behalf of defendant. There also was evidence which the court held should have been admitted that the driver made statements that he had some deliveries to make. The opinion stated that "Respondent concedes that plaintiff made a prima facie case" and mentions there were "glaring contradictions in the evidence," which would seem to indicate the existence of a factual dispute beyond mere presumptions. It would appear, therefore, that the Barz case meets the requirements of Guthrie—ownership plus general employment of the driver by the defendant. However, the Barz opinion, at 271 S.W. l. c. 363, referred to the fact the vehicle "was a business vehicle, operated during business hours" and quoted from O'Malley v. Heman Const. Co., 255 Mo. 386, 391, 164 S.W. 565, 566, a 1914 case involving a wagon, as follows: "There being sufficient evidence to warrant a finding of defendant's ownership of the wagon, it was not necessary * * * to show affirmatively that the driver was defendant's servant" and "was acting within the scope of his employment." The opinion in the Barz case was written by Commissioner Higbee in Division Two. It was adopted as the opinion of the court en banc, three of the judges concurring in the opinion, three judges dissenting without opinion and one judge concurring in result. The actual decision was to reverse and remand the cause. The jury had returned a $3000 verdict against the driver and the trial court had directed a verdict for the defendant owner at the close of all the evidence.

The Barz case has sometimes been relied upon as holding that proof of ownership of an automobile makes out a prima facie case against the owner and places upon him the burden of proving that the driver was not using the automobile in pursuit of business of the owner (for example, Hampe v. Versen, 224 Mo.App. 1144, 32 S.W.2d 793, 795; Edwards v. Rubin, 221 Mo.App. 246, 2 S.W.2d 205, 206; Murphy v. Tumbrink (Mo.App.), 25 S.W.2d 133, 134), although this court en banc has twice pointed out that Barz is not a controlling ruling because the opinion did not have the concurrence of a majority, that there was a decision on the facts of the case but no authoritative pronouncement of law, State ex rel. Kurz v. Bland, 333 Mo. 941, 64 S.W.2d 638, 640, and State ex rel. Vesper-Buick Automobile Co. v. Daues, 323 Mo. 388, 19 S.W.2d 700, 707, 67 A.L.R. 157. Division Two pointed out the same thing in Ross v. St. Louis Dairy Co., 339 Mo. 982, 98 S.W.2d 717, 722. See also Mulanix v. Reeves, 233 Mo.App. 143, 112 S.W.2d 100, 108. Apparently the last time the Barz case was cited by a Missouri appellate court was in 1946, Foster v. Campbell, 355 Mo. 349, 196 S.W.2d 147, 150, where the court said under the evidence in that particular case it was not necessary to determine whether plaintiff was entitled to have the owner's liability submitted upon the mere fact of the nature of the vehicle (a pick-up truck) and his ownership of it.

We are of the opinion the rule should not be expanded beyond what is allowed under Guthrie v. Holmes, supra, and that both proof of ownership and general employment of the driver by the owner are required to raise the presumption that the driver was acting within the scope of his employment. The burden is still on the plaintiff as the moving party, the one seeking to collect, to establish his case, whether it be in tort, contract or something else. The owner can only be made liable for the negligent use of a motor vehicle, whether commercial or pleasure, by another upon some application of the principle of respondeat superior. When the allegation as to agency is denied, as here, the burden of proving it is upon plaintiff.

What plaintiff is contending for here is that upon proof of fact A (ownership) a presumption arises from which fact B (that the driver was an employee of owner) and fact C (that the employee was within scope of employment at time of collision) can be assumed, in the absence of evidence to the contrary. Justification for this is stated in a 1922 decision, Rockwell v. Standard Stamping Co., 210 Mo.App. 168, 241 S.W. 979, 981, as follows: "Since the advent of the automobile and its almost universal use many accidents occur where the automobile speeds away from the scene. * * * In such cases it would be a harsh rule to require the plaintiff to do more than prove the ownership of the vehicle. * * * It is a just rule and one of necessity, especially since the advent of the automobile. It casts no special hardship on the owner, who can easily show by positive evidence that the vehicle was not under his control at the time, or, if in charge of his agent, that such agent was not acting for him, if such are the true facts."

However, if plaintiff is the victim of a hit-and-run driver who actually gets away, the presumption being sought will not help plaintiff ascertain the identity of the owner. The presumption assumes plaintiff can prove ownership. If plaintiff can do this he can proceed to file suit and once suit is filed, the presumption can no longer be justified as a matter of necessity, based on the assumed inability of the plaintiff to do more than prove ownership, because under our present day discovery procedures whatever the defendant knows about agency and scope of employment the plaintiff can also know, although this was not always the case. It used to be that the primary source of discovery was depositions, which involved many practical limitations, such as might have been encountered here had depositions been attempted of the corporate officials of defendant in Nebraska. It might have been difficult for plaintiff to

locate the particular officer who had the information sought. It might have been prohibitively expensive in time and money for plaintiff to have financed the depositions. But this changed with the new code in 1945 with respect to finding out what the controverted issues are and what the proof will be on them.

In the present case it was apparent on the pleadings that agency was a controverted issue. But it could not be determined from the pleadings whether this was to be a controverted issue in fact or not at the trial. In comparing the new code with the old, which they said, " * * * made it possible to conceal issues and spring surprises at the trial", Judges Hyde and Douglas wrote in their articles in the Missouri Bar Journal, "The basic principle of the new code is just the opposite; its aim is to determine what are the controverted issues before the trial begins and limit the trial to them. Immaterial and uncontroverted matters are sifted out so that trial time will not be wasted on them. This is done both with the aid of new procedural methods and by better use of old ones. * * *" (Carr, Missouri Civil Procedure, Vol. 2, p. 536).

 On the issue of whether the defendant owner's vehicle is being operated by his agent, servant or employee and if so whether such operation is within the scope of his employment, plaintiffs today have available under rule 56 interrogatory procedure by which, inexpensively and promptly, a defendant can be compelled to state the relevant facts pertaining to such issue. In fact, where there is a corporate defendant, as here, it is required that such knowledge as is available to defendant be furnished. If the answers show agency and scope of employment, plaintiff's problem is solved, or can be by correct further use of such information, such as request for admission of truth of relevant facts or for a pre-trial conference. If the answers show the opposite, then plaintiff knows the issue is genuine and he will have to

muster what proof he can, the same as on any material disputed issue. In neither event is it necessary that plaintiff be aided by a presumption that proof of mere ownership in the absence of evidence to the contrary will get him to the jury. Getting to the jury on agency is a matter of trial preparation. That is where it belongs and where it should stay. If plaintiff decides to go to trial without information on this issue and without ascertaining whether it is in truth and in fact to be a disputed and not a conceded issue at trial, that is plaintiff's lookout and defendant need do nothing about it if that is the way plaintiff wants to try the case.

In Detrich v. Mercantile Trust Company (Mo.Sup.), 292 S.W.2d 300, 304, the court said: "Presumptions are aids to reasoning and argumentation, which assume the truth of certain matters for the purpose of some given inquiry. They may be grounded on general experience, or probability of any kind; or merely on policy and convenience." As to general experience or probability, it by no means follows in this day and age, with the widespread use of motor vehicles, that ownership of a particular vehicle means that the driver is using it as the agent, servant or employee of the owner and if so, within the scope of his employment at the crucial time. In the case at bar, for example, the tractor unit, which was described as a "trailer-hauling vehicle", having a shortened wheel base in order to carry a long load, was not hauling anything at the time of the accident. Also, the fact that defendant paid the towing and storage charges on the vehicle is equivocal. It would appear that an owner would do this to obtain his property regardless of whether it was or was not being used on his business at the time of the accident. As to policy and convenience there does not seem to be any sound reason of policy or convenience why with the means of obtaining information which are available to present day plaintiffs that a presumption such as here contended for should be raised merely from proof of ownership, even where a

commercial vehicle is involved. It does not appear that failure to extend the presumption as requested will cause meritorious causes to fail through inability of plaintiff to produce affirmative evidence of the essential facts. We therefore see no compelling reason to extend the rule beyond that long established by Guthrie v. Holmes, supra, and rule that on the record before us plaintiff failed to make out a case of agency against the corporate defendant. However, since the case was tried on the erroneous theory accepted by the trial court that plaintiff need prove no more than ownership of the vehicle by the defendant and there was thus no occasion for plaintiff to attempt to prove anything more, although better evidence is doubtless available, the case should be remanded so as to give plaintiff an opportunity to develop the facts on the issue, Kickham v. Carter (Mo.Sup.), 314 S.W.2d 902, 907. Cases which state or intimate that proof of ownership of the vehicle involved is sufficient to raise the presumption that it was then and there being used in defendant's business should no longer be followed.[3]

■■■ It is true it can be argued that no matter how much times have changed with respect to use of motor vehicles, the fact remains that the owner is in better position than the injured plaintiff to know whether the person driving his car was his agent, servant or employee and whether he was within the scope of his employment; that, by analogy, the matter of defendant possessing superior knowledge or means of information is one of the elements of the res ipsa loquitur doctrine and that the argument has been advanced, but rejected,

that the discovery procedures available "have now made the evidence of the true cause of an accident as accessible to plaintiff as to defendant, and hence the res ipsa loquitur doctrine should now be abolished in Missouri", Warner v. Terminal R. Ass'n of St. Louis, 363 Mo. 1082, 257 S.W.2d 75, 80; Jones v. Terminal R. Ass'n of St. Louis, 363 Mo. 1210, 258 S.W.2d 643, 645; Bone v. General Motors Corporation (Mo.Sup.), 322 S.W.2d 916, 922, 71 A.L.R.2d 361, and hence it is also unsound to reason that since the discovery procedures have made the information as to whether the driver is acting as the owner's agent and within the scope of his authority as accessible to the plaintiff as to defendant owner, there is no need or justification for the presumption sought by plaintiff herein. However, there are some valid distinctions between the two. For one thing, as pointed out in Warner, supra, the court said the discovery procedures have not made "full knowledge or information relating to the evidence tending to show the causes of all casualties" as accessible to a plaintiff as to a defendant.[4] On the other hand, discovery as to whether the driver was the agent, servant or employee of the owner defendant and if so whether he was acting within the scope of his employment relates to a much narrower field of inquiry. The evidence on this would be as accessible to plaintiff as to defendant. Such information would not be privileged or work product. Furthermore, the res ipsa doctrine has other important requirements besides superior knowledge or means of information on the part of the defendant before it applies, so that its justification does not rest alone on the element of access to information.

3. This includes O'Malley v. Heman Const. Co., supra, Barz v. Fleischmann Yeast Co., supra, Rockwell v. Standard Stamping Co., supra, Edwards v. Rubin, supra, Murphy v. Tumbrink, supra, and Hampe v. Versen, supra.

4. The court did say however, 257 S.W. 2d l. c. 80, that the use of the discovery process "in many cases should enable a plaintiff to state and prove a claim on

specific negligence, although before he would have been obliged to rely upon a res ipsa loquitur inference" and Judge Storckman, in his dissent in Adam Hat Stores v. Kansas City (Mo.Sup. banc), 316 S.W.2d 594, 601, observes, "Since the res ipsa loquitur doctrine is a part of the law of evidence, the need for invoking it has tended to diminish because of the improved discovery provisions of the new Civil Code * * *."

The case also has to be remanded on another assignment raised by appellant, namely, failure to include a definition of "agency" in the instructions. Since the trial court held plaintiff had made a submissible case on respondeat superior and defendant had denied agency, plaintiff's main instruction, No. 3, contained the finding, "First, the driver, Gallagher, was operating the New Moon Home motor vehicle within the scope and course of his employment by New Moon Homes at the time of the collision", but plaintiff failed to submit an appropriate definition of agency, as required by MAI (see Missouri Approved Jury Instructions, Notes on Use, p. 145). This was reversible error, Peak v. W. T. Grant Company (Mo. Sup. banc), 409 S.W.2d 58, 60. On retrial, if agency is a contested issue, plaintiff should also include the requirement of MAI 18.01 of a finding that the driver was an employee of the defendant, which was omitted in plaintiff's Instruction No. 3.

There is no need to pass on the other assignments raised by defendant, some of which may not re-occur upon a retrial and others of which the parties may see fit to avoid in view of the objections which have been made to them.

The judgment of the trial court is reversed and the cause is remanded for a new trial on all issues.

HENLEY, FINCH, EAGER and DONNELLY, JJ., concur.

HOLMAN, C. J., concurs in result.

STORCKMAN, J., concurs in separate concurring opinion filed.

CONCURRING OPINION

STORCKMAN, Judge.

With my concurrence I wish to note that all commercial motor vehicles are required by law to display in a conspicuous place on both sides thereof the name of the owner and the address from which such motor vehicle is operated. Section 301.330, RSMo 1959, V.A.M.S. A commercial motor vehicle is one designed or regularly used for carrying freight and merchandise, or more than eight passengers. Section 301.-010, subd. 1, RSMo 1959. Logically these legal requirements should at least furnish a basis for a presumption or inference that the person whose name appears on a commercial motor vehicle is the owner of it. It is not necessary to hold otherwise in this case and the opinion should not be so interpreted.