ANN O'MALLEY, an infant, by JOHN O'MALLEY, her Next Friend, v. HEMAN CONSTRUCTION COMPANY, Appellant.

Division One, March 3, 1914.

1. **OWNERSHIP: Inference from Possession.** Possession warrants an inference of ownership, and ownership having been found once to exist, the general rule is that it is presumed to continue until a change therein is affirmatively shown.

2. ———: ———: **Evidence: Negligence.** On the question whether or not the wagon that caused plaintiff's injuries belonged to defendant, a witness testified that he was acquainted with the driver and saw him driving the wagon which struck the plaintiff, and that he personally knew that the team and wagon belonged to the defendant. On cross-examination this witness said he knew the wagon belonged to defendant because he had worked next to defendant's quarry (although before the injury to plaintiff he had ceased to do so), and had seen the teams go into the stable there at night. *Held*, that the jury would have been warranted in finding the fact of defendant's possession from the witness's testimony and in inferring his ownership from that possession.

3. ———: ———: ———: ———: **Master and Servant: Scope of Employment.** Where plaintiff seeks damages for being run down by a wagon, and there is sufficient evidence to warrant a finding that defendant owned the wagon, it is not necessary for plaintiff to show affirmatively that the driver was defendant's servant, or that he was acting within the scope of his employment.

4. **NEGLIGENCE:** Evidence: Question for Jury. Where the trial court, which set aside plaintiff's involuntary nonsuit in an action for damages for being run down by defendant's wagon, had before it the witnesses, together with plats of the vicinity, heard the testimony of one who saw plaintiff fall a short distance in front of the wagon, and comprehended the witness's comparisons of that distance with distances in the court room, the ruling of the trial court that there was evidence of actionable negligence sufficient to take the case to the jury will not be disturbed, the plats having been omitted from the record and the other circumstances necessarily not appearing in it in such form that the Supreme Court can know what result they ought to induce.

Appeal from St. Louis City Circuit Court—*Hon. W. B. Homer*, Judge.

AFFIRMED AND REMANDED.

*Rogers & Koerner* for appellant.

(1) The evidence offered by plaintiff failed to make a prima-facie case, because it does not tend to prove: (a) That her injuries were due to the negligence of the driver of the wagon; (b) that the driver was in defendant's employ; or (c) that the driver, if in such employ, was acting within the scope of his employment at the time of the injury. (2) The evidence in the case affirmatively shows that the accident was unavoidable on the part of said driver, and is not susceptible of any reasonable inference to the contrary.

*Charles P. Comer, John A. Dowdall* and *Jesse L. England* for respondent.

The court did not err in setting aside the nonsuit and in granting plaintiff a new trial for the following reasons: (1) Plaintiff had made out a prima-facie case by showing that the team and wagon in question was the property of the defendant, and that she was injured by the careless management of said team and

wagon by the person in charge of and driving same. Fleishman v. Ice & Fuel Co., 148 Mo. App. 132; Seaman v. Koehler, 122 N. Y. 646; Wylde v. Railroad, 53 N. Y. 156; Baldwin v. Abraham, 67 N. Y. Supp. 1079; 1 Sh. & Red. Neg., sec. 158; Hall v. Railroad, 124 Mo. App. 671. (2) Plaintiff having proved the ownership of the team and wagon in the defendant established prima-facie the driver was a servant of defendant and acting within the scope of his employment at the time she was injured. Fleishman v. Ice & Fuel Co., 148 Mo. App. 132; Morris v. Kohler, 41 N. Y. 42; Abbott, Trial Evidence, 735; 22 Am. & Eng. Ency. Law (2 Ed.), 1278. (3) A demurrer to the evidence admits as true every fact which the testimony in behalf of the plaintiff tends to prove, and every inference which may reasonably be drawn therefrom. Hach v. Railroad, 208 Mo. 581; Kinlen v. Railroad, 216 Mo. 145; Pitthan v. Schaitaman, 127 Mo. App. 29.

BLAIR, C.—This is an appeal from an order of the circuit court of the city of St. Louis setting aside involuntary nonsuit. The action was for damages for injuries to plaintiff (eight years of age when injured) occasioned by being struck by a wagon plaintiff claimed defendant's servant negligently drove upon her.

Defendant assigns for error the ruling setting aside the nonsuit and contends the evidence does not tend to show (1) that the driver was in defendant's employ; (2) or, even if so, that he was acting within the scope of his employment; (3) or that plaintiff's injuries were due to the driver's negligence or that he could have avoided the injury.

The driver testified he got the wagon he was driving when plaintiff was injured from "Heman's" at "Heman's barn" at the corner of Ashland avenue and Market street, but did not know whether it was the property of the Heman Construction Company; that

Mr. John Heman employed him, he thought, but he did not know whether John Heman was connected with the Heman Construction Company. Another witness testified positively that he was acquainted with the driver and saw him and the wagon he was driving which struck plaintiff and he personally knew that the team and wagon belonged to the Heman Construction Company. This witness was cross-examined on this phase of the case as follows:

"Q. Now, how do you know what wagon belonged to the Heman Construction Company and what wagon does not belong to that company? A. Well, I worked right there next to his quarry for about a year and I used to see the teams go in that stable at night. Q. You worked next to whose quarry? A. Heman's. Q. Who did you work for? A. Mike Hanneck. Q. When? A. It has been about a year and a half ago. Q. You mean in 1908? A. Yes, sir. Q. What time did you quit work there? A. I don't know just when it was I quit. Q. Did you quit there in 1907; wasn't it? A. 1907; I don't know. Q. You were not working there in 1909 were you? A. I don't know that. Q. You were not working there at the time when your sister (plaintiff) got hurt, were you? A. No, sir. Q. It was before that sometime, wasn't it? A. I don't know just exactly when it was. Q. Well, it was before that when you worked there, wasn't it? A. It was before that, yes. Q. Is that the only way you know; is that the only way you know of your own knowledge about the teams of the Heman Construction Company? A. Seeing them there at the stable. Q. That is all you know about those teams and who owned them, isn't it? A. Yes, sir."

In the same connection there was a friendly colloquy between the court and counsel relative to the admissibility of certain testimony of Officer Cousins, who arrested the driver of the wagon. This witness testified the driver told him the wagon was the prop-

erty of the Heman Construction Company, the defendant here. On objection the court ruled the driver's declaration was not competent to prove his agency for defendant and added: "I am simply permitting him (the witness) to say that he (the driver) was driving a wagon, and state that he was driving a wagon of defendant. That is what I understood him to say." The witness: "Yes, sir."

There was evidence tending to show that the wagon was moving north on Taylor avenue and that when it crossed the Wabash tracks about 250 feet south of the point where the injury occurred the driver was whipping the horses and they were going "awful fast —as fast as they could trot;" that there was no other wagon on the avenue; that plaintiff and her twelve-year-old brother were riding a bicycle, plaintiff sitting on the bicycle rod; that they rode eastward on Audubon avenue coming into Taylor avenue from the west and turning north upon it; that the wagon which struck plaintiff was near the Wabash tracks when the children rode into Taylor avenue; that plaintiff's brother was propelling the bicycle north on the east side of Taylor avenue at a speed equal to that at which he could run when the wagon came rumbling up behind and when it was some twenty feet away plaintiff became frightened, began to scream and fell off the bicycle about fifteen feet in front of the wagon; that the wagon went right on over her. One witness who was in such position that he saw the child fall from the bicycle but could not see the wagon at that moment, because of intervening structures, testified that after plaintiff fell "it was not but a few seconds" until the wagon came into view and that the team and wagon moved its own length after coming into view.

There were plats in evidence not reproduced here but omitted by consent of counsel. There were also questions put to the brother of plaintiff relative to

distances in the court room, these questions being designed to test the accuracy of his estimate of the distance in front of the wagon his sister fell. The result of these questions is not in the record since the distances in the court room concerning which the witness was asked are not before us.

I.   There was sufficient evidence of the ownership of the wagon by defendant to take Ownership: that question to the jury. The witness Inference from Possession. Tom O'Malley testified the team and wagon belonged to defendant, and from his cross-examination it appears he drew the inference of such ownership from possession of the team by defendant sometime previous. The law in this State is that possession warrants an inference of ownership (Vogel v. St. Louis, 13 Mo. App. l. c. 119; State v. Boone, 70 Mo. l. c. 653) and the jury would have been warranted in finding the fact of possession from Tom O'Malley's testimony and inferring the fact of ownership from that. The cross-examination, therefore, fell far short of destroying O'Malley's direct testimony.

Further, ownership having been found once to exist, the general rule is it is presumed to continue until a change therein is affirmatively shown.

II.   There being sufficient evidence to warrant a finding of defendant's ownership of the wagon, it was not necessary for plaintiff to show affirmatively that the driver was defendant's servant. This ques-Master and tion is well considered in Fleishman v. Ice Servant. & Fuel Co., 148 Mo. App. 117. The same decision answers the suggestion relative to the evidence that the driver was acting within the scope of his employment. Counsel, however, disclaim reliance upon that suggestion.

III. So far as concerns the contention that there was, in any event, no evidence of action-able negligence, but one phase need now be considered.

*Negligence: Evidence.*

The trial court had before it the witnesses and the plats. It heard the testimony of Dan O'Malley and heard and understood the comparison of his estimate of the distance the wagon was from his sister, when she fell, with distances in the court room. These things do not appear in this record in such form that we can know what result they ought to induce. The trial court was in a position to know, and held the case was for the jury. It must be assumed, for present purposes, that the distance was sufficient to have enabled the driver, after plaintiff fell and after he saw, or ought to have seen, her, to have stopped his wagon before injuring her. The presumption is the trial court ruled correctly, and the whole record not being here that presumption concludes the matter on this phase of the case. Defendant cites Lee v. Jones, 181 Mo. 291. It does not militate against what has been said. The judgment is affirmed, and the cause remanded. *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court. All the judges concur.