Commonwealth ex rel. Mullins *v.* Maroney, Appellant.

Argued December 15, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Paul D. Shafer, Jr.,* Assistant District Attorney, with him *Vincent J. Pepicelli,* District Attorney, for appellant.

*Edwin L. Klett,* with him *John M. O'Laughlin,* and *Eckert, Seamans & Cherin,* for appellee.

OPINION BY JACOBS, J., March 23, 1967:

The Commonwealth appeals the order of the court below granting a new trial in this habeas corpus proceeding on the ground relator was deprived of his constitutional right to counsel at his guilty plea hearing and sentencing.

The sole question before this court is whether relator waived his right to counsel.

Relator was accused of being one of three men who staged an armed robbery of the Loblaw Market in Meadville in November of 1961. He and his co-defendants, Matteson and Hopkins, were arrested in Marion,

Ohio. Matteson and Hopkins waived extradition and were returned to Meadville and arraigned on December 2, 1961. Relator fought extradition and apparently consulted an Ohio attorney, but was returned to Meadville on February 1, 1962 and appeared before Magistrate Ladner that day. The three defendants appeared in court on February 5, 1962 at which time relator pleaded guilty to an indictment charging him with being an accessory before the fact to armed robbery.[1] He was sentenced on February 26, 1962 by Judge HERBERT A. MOOK. Relator then filed a petition for a writ of habeas corpus alleging deprivation of counsel. The dismissal of the petition after a hearing by Judge MOOK on April 30, 1964, on his finding that Mullins had competently and intelligently waived counsel, was affirmed by this court, *Commonwealth ex rel. Mullins v. Maroney,* 204 Pa. Superior Ct. 749, 205 A. 2d 122 (1964), and allocatur was refused by the Supreme Court of Pennsylvania, 204 Pa. Superior Ct. xxxix. Relator then presented his case to the Federal courts which directed him to reapply to Pennsylvania courts in light of recent Pennsylvania decisions. He did so reapply, and Judge MOOK having died, Judge GLENN E. MENCER was specially appointed to preside in the case. After reviewing the record and the transcript of the hearing held before Judge MOOK on August 5, 1963, Judge MENCER decided that relator had not intelligently waived counsel and granted a new trial.

To be a valid waiver of a right so fundamental as the right to counsel the waiver must have been the knowing and understanding act of the accused. *Commonwealth ex rel. McCray v. Rundle,* 415 Pa. 65, 202 A. 2d 303 (1964). In examining the validity of such a waiver this court must consider "all of the facts and circumstances of the particular case, including the back-

---

[1] Matteson and Hopkins also entered guilty pleas at that time.

ground and conduct of the accused. . . ." *Common-wealth ex rel. McCray v. Rundle,* supra, at 69. The burden is initially upon the Commonwealth to show that the accused "was advised or was aware of his right to have assigned counsel but that the accused intelligently and understandingly rejected the services of counsel." *Commonwealth ex rel. O'Lock v. Rundle,* 415 Pa. 515, 525-26, 204 A. 2d 439, 444 (1964). But *Commonwealth ex rel. Wright v. Cavell,* 422 Pa. 253, 220 A. 2d 611 (1966), has expressly recognized the rule, applicable in federal courts as well, that a defendant who refuses the appointment of counsel must show by a preponderance of the evidence that his waiver was not understandingly and intelligently made. Chief Justice BELL there stated at page 258: "The burden of showing a voluntary understanding and intelligent waiver of counsel is on the Commonwealth where the record is silent, or indicates that there was no understanding and intelligent waiver. . . . However, where relator refused to have the court appoint a lawyer to represent him and this refusal appears of record, the accused must show by a preponderance of the evidence that the waiver was not understandingly and intelligently made by him." Accord, *Carnley v. Cochran,* 369 U.S. 506, 82 S. Ct. 884, 8 L. ed. 2d 70 (1962); *Moore v. Michigan,* 355 U.S. 155, 78 S. Ct. 191, 2 L. ed. 2d 167 (1957). In *Moore v. Michigan,* supra, Justice BRENNAN said that when a defendant collaterally attacks a conviction on the ground he did not have benefit of counsel "he has the burden of showing, by a preponderance of the evidence, that he did not have counsel and did not competently and intelligently waive his constitutional right to the assistance of counsel." 355 U.S. 161, 2 L. ed. 2d 172. In *Carnley v. Cochran,* supra, Justice BRENNAN explained *Moore v. Michigan* as follows: "In Moore, the record showed clearly that the petitioner had expressly declined an offer of counsel by the trial judge, and we

held that the accused had to show by a preponderance of the evidence that his acquiescence was not sufficiently understanding and intelligent to amount to an effective waiver. But no such burden can be imposed upon an accused unless the record—or a hearing, where required—reveals his affirmative acquiescence."

The transcript of the guilty plea demonstrates that relator was asked if he wanted counsel and replied that he did not. The following appears of record:

"Questions by the Court:

"Q. Your name is Richard Mullins?

"A. Yes, sir.

"Q. Where do you live?

"A. Marion, Ohio.

"Q. Do you have an attorney?

"A. No, sir, I haven't.

"Q. Do you want one?

"A. No, I don't.

"Q. You have a right to have counsel here before you appear before the court, you understand that, do you?

"A. Yes, sir."

Judge Mook then read the indictment to relator. Relator stated he understood the charge. Judge Mook then explained to relator that he had a right to have his case presented to the grand jury and a right to a trial at which he could be present with counsel.

This record of an express refusal of counsel places the burden upon relator to show by a preponderance of the evidence that his waiver was not knowingly and intelligently made.[2] An examination of the record of this

---

[2] In *Moore v. Michigan,* supra, the record showed only that the trial judge asked if defendant had a lawyer and whether he wanted one and defendant replied in the negative. In *Commonwealth ex rel. Wright v. Cavell,* supra, defendant was asked at his sentencing if he had a lawyer, if he wanted to hire one, and if he wanted the court to appoint one. His answer to each question was "No, sir."

case convinces us that relator has not sustained his burden of proof.

Relator contends that he did not understand that when Judge MOOK told him he had a right to counsel and asked him if he wanted one that this meant "free" counsel, and that because of his lack of knowledge his waiver was invalid. He offers two facts to support his contention: His formal education ended with fourth grade, and he was not familiar with Pennsylvania procedure since it was one of the states in which he had not been in trouble before. Neither of these facts precludes a knowing, intelligent waiver. Lack of education does not preclude an effective waiver, especially where, as here, he was expelled from school because of poor health, and not because of any intellectual deficiency. There is no other indication in the record that relator is not of at least average intelligence. His assertion that he was not familiar with Pennsylvania procedures is equally unconvincing. In the face of these two factual assertions, both of little substance, the Commonwealth has produced a convincing picture of a man who knew very well the implications when he waived counsel before Judge MOOK. Relator came before the court a hardened, experienced, 32 year old criminal. He admitted to being sentenced in criminal proceedings "numerous times" and mentioned specifically two convictions in Ohio, one in California and one in Missouri. He was familiar with free, court appointed counsel, having had the benefit of one in the past. He fought extradition from Ohio to Pennsylvania in the Ohio courts. Captain Holt, the prosecuting officer, testified that he explained the charges to relator, pointed out the seriousness of the alleged crime, and told relator of his rights. He testified he said to

---

In both cases the record was sufficient to shift the burden to the defendant.

relator "that if he couldn't afford an attorney that Judge Moor would appoint an attorney for him." In the face of these facts, relator's two assertions hardly amount to a "preponderance of the evidence" indicating a lack of a knowing, intelligent waiver.

Relator and the court below rely on several Pennsylvania and Federal cases none of which are controlling. In both *Commonwealth ex rel. McCray v. Rundle,* supra, and *United States ex rel. McDonald v. Commonwealth of Pennsylvania,* 343 F. 2d 447 (3d Cir. 1965), the defendant did not refuse an offer of court appointed counsel, but, rather agreed to suggestions to proceed without counsel. In both, defendants had made previous attempts to obtain counsel. To further complicate McCray's situation, his co-defendant had a lawyer who attempted to shift all the blame to McCray. In *McDonald* the court said only that the record alone could not support a waiver and sent the case back to the district court for further hearings on the circumstances of the waiver. In *Commonwealth ex rel. O'Lock v. Rundle,* supra, there was no record that he was offered counsel and the court held a waiver cannot be implied from the mere entry of a guilty plea or the failure to request counsel. In *Commonwealth ex rel. Johnson v. Maroney,* 416 Pa. 451, 206 A. 2d 322 (1965), the record was silent in regard to an offer or waiver of counsel.

Relator contends that he could not possibly have waived the right to counsel at the time of sentencing which occurred twenty-one days after the entry of the guilty plea. We disagree.

At the hearing on the guilty plea the written form read to relator and signed by him contained his consent to the pronouncement of sentence by the court.[3]

---

[3] In *Commonwealth ex rel. Ross v. Botula,* 206 Pa. Superior Ct. 1, 211 A. 2d 42 (1965), we held that waiver of counsel cannot be shown by the mere fact that a defendant signs a form such as

Relator stated that he understood the form and the judge told him he would be sentenced three weeks from that date. Thus he must have known that sentence flowed naturally and inevitably from his guilty plea. In this factual situation sentencing was merely a continuation of the proceeding at which his waiver of counsel appeared of record. Had the judge imposed sentence immediately it could not be seriously contended that he should have again inquired if relator wished counsel.[4] The discretionary extension of time does not make the situation different. We, therefore, conclude that relator refused counsel for sentencing as well as for the guilty plea. Relator has offered nothing to show that the resultant waiver was not intelligently and understandingly made.

The order of the court below is reversed and the petition for a writ of habeas corpus is dismissed.

---

DISSENTING OPINION BY HOFFMAN, J.:

I respectfully dissent.

The majority relies on a quotation from the record which would have furnished doubtful support for an explicit finding that relator waived his constitutional right to counsel. As a basis for reversing the determination that there was no waiver, however, the quoted language is simply inadequate.

As the majority correctly notes, our Supreme Court has recently shifted the burden of proof of "non-waiver" to the relator in a narrow class of cases: "[W]here relator refused to have the Court appoint a lawyer to represent him and this refusal appears of record, the

---

the one used in this case. However, that case does not prohibit reference to the form to establish the extent of defendant's waiver once that waiver has been shown to be valid.

[4] See *United States ex rel. Mazewski v. Myers*, 359 F. 2d 940 (3d Cir. 1965), where waiver of counsel at trial was held to carry over to the sentencing which followed immediately.

accused must show by a preponderance of the evidence that the waiver was not understandingly and intelligently made. . . ." *Commonwealth ex rel. Wright v. Cavell,* 422 Pa. 253, 258, 220 A. 2d 611 (1966).

In *Wright,* however, the court had asked the accused:

"Q. Do you have an attorney to represent you?

"A. No, Sir.

"Q. Do you want to *hire* an attorney of your own choosing?

"A. No, Sir.

"Q. Do you want the Court to *appoint* an attorney to represent you?

"A. No, Sir."

*Commonwealth ex rel. Wright v. Cavell,* supra, at 255 (emphasis supplied). In short, the record in that case clearly showed an offer of appointed, as opposed to retained, counsel.

In the present case, the relevant portion of Judge Mook's inquiry was considerably less specific:

"Q. Do you have an attorney?

"A. No, Sir, I haven't.

"Q. Do you want one?

"A. No, I don't."

Furthermore, the relator in this case specifically alleged in his petition that he did not understand Judge Mook to have offered "free" counsel. The habeas corpus court obviously believed him, since it issued the writ. No such contention appears to have been raised in the *Wright* case.

Assuming, for the sake of argument, that relator did fail to prove "non-waiver" by a preponderance of the evidence, a narrow question is before us. The burden-shifting rule announced in *Wright* is concededly applicable to a limited class of cases. Should it have been expanded to cover the facts of the case now before us? In my view, the whole trend of the criminal law,

and especially the constitutional decisions of the last two years, militate against the majority's affirmative answer.

Thus, in *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court of the United States held that appointed counsel must be offered to an indigent accused while he is in "custodial interrogation."

"In order fully to apprise a person interrogated of the extent of his rights under this system then, it is necessary to warn him not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him. Without this additional warning, the admonition of the right to consult with counsel would often be understood as meaning only that he can consult with a lawyer if he has one or has the funds to obtain one. The warning of a right to counsel would be hollow if not couched in terms that would convey to the indigent—the person most often subjected to interrogation—the knowledge that he too has a right to have counsel present. . . . [O]nly by effective and express explanation to the indigent of this right can there be assurance that he was truly in a position to exercise it." *Miranda v. Arizona,* supra, at p. 473.

If so specific an offer is required in behalf of an accused before he may be questioned in the police station, then a higher degree of caution must surely be exercised when he is before the court which may deprive him of his liberty, or even his life. Cf. *Escobedo v. Illinois,* 378 U.S. 478 (1964).

The burden-shifting rule announced in *Commonwealth ex rel. Wright v. Cavell,* supra, should therefore be applied only to those cases which show a clear offer and rejection of "free, court-appointed counsel," on the record. This is not such a case.

Finally, it should be noted that this case presents special circumstances, which are highly relevant on the

question of "waiver." Relator's formal education ended with the fourth grade. It may be true, as the majority urges, that he was expelled from school because of poor health, "and not because of any intellectual deficiency." But we may nonetheless infer from his lack of schooling that he is a functional illiterate. Plainly, he was ill-equipped to face the complex machinery of a criminal prosecution alone.

For these reasons, I would affirm on the able opinion of Judge MENCER in the court below.