**STATE of Missouri, Respondent,**

v.

**Hubert MORRIS, Appellant.**

**No. 55190.**

Supreme Court of Missouri,
Division No. 2.

Nov. 9, 1970.

Motion for Rehearing or for Transfer to
Court En Banc Denied Dec. 14, 1970.

 

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

G. Carroll Stribling, Jr., St. Louis, for appellant.

FINCH, Judge.

Defendant, convicted by a jury of operating a motor vehicle without the owner's permission (§ 560.175, V.A.M.S.), was sentenced by the court pursuant to the Second Offender Act (§ 556.280, V.A.M.S.) to imprisonment for five years, and he appeals. We reverse and remand for a hearing and finding to determine the applicability of § 556.280.

The first issue raised involves whether defendant's motion for judgment of acquittal should have been sustained. In determining this question, "We do not recite all of his testimony because, in testing the sufficiency of the evidence to determine whether defendant's motion for a judgment of acquittal should have been sustained, we consider only the evidence favorable to the verdict. ' * * * all the substantial testimony tending to support the verdict must be considered as true, and every legitimate inference therefrom favorable to the verdict must be indulged.' State v. Taylor, Mo., 324 S.W.2d 643, 646, 76 A.L.R.2d 671." State v. Wishom, Mo., 416 S.W.2d 921, 923. Where, as here, defendant has offered evidence, submissibility of the case will be determined on the entire evidence. State v. Sykes, Mo., 372 S.W.2d 24.

On the morning of June 23, 1969, William E. Roberts parked his 1963 Chevrolet sedan in an alley adjacent to the building where he was employed. During the morning, Roberts' boss, Gary Menkin, asked to borrow the car to run an errand. Roberts gave him the car keys for that purpose, as he occasionally had done on previous occasions. At about 3:30 p. m. Roberts checked on his car and it was there. At 6:00 p. m. Roberts went to where the car was parked for the purpose of bringing a TV set into

the shop where it was to be left overnight and discovered that his automobile was missing. Mr. Menkin had not yet returned the car keys to him, but when Roberts checked, Menkin had the car keys in his pocket.

Four days later police officer Oberdieck, at 3:30 a. m., observed a Chevrolet sedan without any state license plate crossing the street in front of him. The car pulled up to the curb a short distance down the street and the police officer then drove up and stopped behind that car. On inquiry, the officer found that defendant, who was in the driver's seat and whom the officer had seen operating the car, had no driver's license. The officer then arrested defendant for failure to have a driver's license and for not having a state license plate. Thereafter, the officer checked the serial number of the car and found that it was the Chevrolet belonging to Roberts. Defendant then was prosecuted for operating that vehicle without the owner's permission. Roberts testified at the trial that he did not know the defendant and had not given him permission to drive his automobile.

Defendant took the stand and claimed that he had not driven the car at all. He said that he and his girl friend were riding with a friend named Leon, that Leon had driven the car to that point, where he stopped and went into a nearby house, and that defendant and his girl friend were awaiting Leon's return when the officer came up.

The first point raised is that a submissible case was not made. This involves, according to the defendant, the question of "whether the State must prove that the person who is in actual custody of the automobile in question did not authorize its use." It is defendant's position that Roberts, by permitting his boss that morning to use his car and handing him the keys for that purpose, parted with the care, custody and control of the car and vested them in Mr. Menkin. Since Menkin did not testify, defendant claims that there was no evidence that the car was being operated without the consent of the one who had custody and

control thereof. Such testimony, says defendant, was necessary to show that the car was being operated without the consent, express or implied, of the owner.

Defendant cites and relies on the case of State v. Townsend, Mo., 327 S.W.2d 886, as being somewhat analogous to the situation here presented. In Townsend the owner of an automobile, Frank Watson, left town, but before he did so he turned his car over to his nephew, Roland, to use and operate. While Watson was out of town, Roland drove the car to a point where he parked and locked it, and when he returned he found the car was gone. The next day defendant was apprehended driving the car, and he was prosecuted for driving it without the owner's permission. The nephew testified that he had not given permission to the defendant and had not loaned the car to anyone. He also testified that his uncle was not in St. Louis at that time and that he, the nephew, had sole use and possession of the car. In affirming the conviction, this court held that the evidence of the nephew was sufficient to authorize the inference that defendant was operating the vehicle without the consent of the owner and that it was not necessary to call Frank Watson as a witness to so prove.

■ Defendant reasons that if it was necessary to have the testimony of the nephew in the Townsend case to show that defendant was operating the vehicle without the consent of the owner, then it was necessary in this case to have the testimony of Menkin, to whom Roberts had loaned the car. The evidence does not support the defendant's theory of analogy. In the first place, the evidence does not show that Roberts had vested control and custody of his automobile in Menkin, as the uncle had done in the Townsend case when he left town and completely turned the car over to his nephew. Here, Roberts merely let Menkin use the car to run an errand. Menkin had made the trip and had come back and parked the car at its accustomed place. He failed to hand back the keys and still had them in his pocket, but the owner of the car

went out to check on it at 3:30 p. m. and he went back at 6:00 p. m. to get a TV set out of the car and bring it into the shop, and he then planned to leave work in his car. His actions are entirely consistent with his retention of custody and control of his automobile and not with the idea that he had parted with custody and control, as the uncle had done in the Townsend case. Roberts and Menkin worked side by side and kept each other informed when leaving the plant. It is reasonable to infer that the keys, although in Menkin's pocket, were available for Roberts at any time. Furthermore, the evidence completely negatives the idea that Menkin had turned the car over to defendant to drive so that he was driving with the owner's implied consent. The keys to the car were still in Menkin's pocket when absence of the car was discovered. Obviously, he had not turned those keys over to the defendant. Furthermore, defendant made no effort to justify possession on any such theory. Instead, he testified that he was simply a passenger in Leon's car and had not driven it at all. As a matter of fact, he claimed that the car in which he was arrested was not the one which belonged to Mr. Roberts. He made no claim that he knew Menkin or that he had borrowed the car from Menkin or anyone else. In this factual situation, the testimony of Menkin was not a prerequisite to prove that the car was being operated without the owner's consent, and we overrule defendant's first contention that a submissible case was not made.

Defendant's second complaint is that the court permitted the State in cross-examining defendant to ask him about prior convictions for the purpose of affecting his credibility. The questions and answers involved were as follows:

"Q Am I correct when I say—or if I say on June 13, 1961 you were convicted of robbery first degree by means of a dangerous and deadly weapon in two cases and robbery in the first degree on a third case— is that correct?

"A Yes sir.

"Q Am I also correct as a result of that sentence you were—those convictions you were committed to the Department of Correction and arrived in their custody July 10, 1961, and your sentence was commuted on October 1, 1965, is that also correct?

"A Yes sir."

The issue raised involves § 491.050, V.A.M.S., which provides as follows: "Any person who has been convicted of a criminal offense is, notwithstanding, a competent witness; but the conviction may be proved to affect his credibility, either by the record or by his own cross-examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining shall not be concluded by his answer."

■ A long line of Missouri cases have applied this statute and have held that pursuant to its provisions, evidence of prior convictions is admissible for purposes of impeachment where a defendant takes the stand to testify in his own behalf. See cases cited under "Witnesses," ⊂⊃337(5) in Vol. 29A, West's Missouri Digest.

Defendant does not attack the constitutionality or the validity of § 491.050. Rather, he contends that it is not mandatory under the statute that proof of prior felonies be received and that the admission of such evidence rests in the sound discretion of the trial court. He argues that prior convictions of defendant of robbery with a dangerous and deadly weapon were not logically related to probability of truthfulness or the issue of credibility of the defendant, and that admission of those prior convictions in evidence constituted an abuse of discretion on the part of the trial court.

In Fisher v. Gunn, Mo., 270 S.W.2d 869, 876, this court said: "It appears to us that the statute, Section 491.050, has arbitrarily accorded to a litigant the right to show a prior conviction for felony or misdemeanor to affect the credibility of the witness. And, while a trial court may generally control cross-examination within proper bounds, still the *right* of cross-examination is an

*absolute right* and the *bounds of the cross-examination,* in so far as concerns one's right to show a prior conviction, have been fixed by the statute." The language used seems to indicate that the court concluded that the right to impeach by showing a prior conviction is absolute, not subject to discretion on the part of the trial judge other than the right to keep cross-examination within proper bounds. However, that language was preceded by reference to some earlier cases which the opinion says indicated that it was not permissible to show a conviction of a crime which was so remote as not reasonably to bear on present character of the witness or the credibility of the witness. The court then went on to note that the case then under consideration involved no issue of remoteness. Consequently, what was said about discretion to exclude based on remoteness really amounted to dictum. See also Willis v. Wabash Railroad Co., Mo., 284 S.W.2d 503, 512; State v. Cox, Mo., 333 S.W.2d 25, 29; and Hoover v. Denton, Mo., 335 S.W.2d 46, 47.

In at least three instances, courts in other states in recent decisions have construed statutes substantially similar to § 491.050, and in each instance have held that the statute makes mandatory the admission of evidence of prior convictions to impeach a witness.

In State v. Hawthorne, 49 N.J. 130, 228 A.2d 682, the Supreme Court of that state considered its statute (N.J.S. 2A:81–12, N.J.S.A.) which provided as follows: "For the purpose of affecting the credibility of any witness * * * his conviction of any crime may be shown by examination or otherwise, and his answers may be contradicted by other evidence. * * *" The trial judge in that case had considered that the word "may" in the above statute (the word also appears in the Missouri statute) conferred discretionary power on the court to admit or exclude the evidence of prior convictions. The Supreme Court of New Jersey, after reviewing the history of the Act, held that the statute conferred an absolute option to show a prior conviction, saying, 228 A.2d 1. c. 684: "In the context 'may' connotes an authorization, a grant of permission to the parties to civil or criminal actions to show the witness's previous criminal conviction by testimonial examination or by production of the record. Plainly the option was intended to be given to the State and the defendant in a criminal case, and the plaintiff and defendant in a civil case. No time limit was imposed upon admissibility. There is simply the flat and unrestricted statement that the conviction of crime may be shown to affect credibility. The authorization represented a policy decision by the Legislature, and established, as a matter of law, the admissibility of a conviction without regard to time interval between the conviction and the person's appearance as a witness. Thus, the 'may' in the statute does not bespeak a grant of permission or discretion to the trial judge to receive or reject the proof. On the contrary, the parties are invested with the option and if it is exercised the examination must be allowed or the record of conviction received when offered."

In State v. West, 285 Minn. 188, 173 N.W.2d 468, the court considered the Minnesota statute, § 595.07 (which is almost identical with our § 491.050), and held that under that statute the State had a right to cross-examine defendant regarding a prior conviction. In so holding, the court said, 173 N.W.2d 1. c. 474: "The members of this court have noted and given some attention to the recent trend of leaving to the trial court the question of whether the particular conviction raised against defendant as a witness in his own behalf substantially affects his credibility. It is our suggestion, however, that revising § 595.07 to conform to the emerging state of the law should be left to the legislature. It is not for the courts to make, amend, or change the statutory law, but only to apply it. If its language embodies a definite meaning which involves no absurdity or contradiction, the statute is its own best

**629**

expositor. City of St. Louis Park v. King, 246 Minn. 422, 75 N.W.2d 487."

In People v. Gilmore, 118 Ill.App.2d 100, 254 N.E.2d 590, the court construed Ill. Rev.Stats.1965, ch. 38, § 155–1, the provisions of which were essentially the same as § 491.050. After citing other cases, including State v. Hawthorne, supra, the court said, 254 N.E.2d 1. c. 593: "Since the presentation of evidence to show an interest or prior conviction is the responsibility of the parties and not of the court, we too hold that 'may' does not grant discretion to the court to receive or reject the proof of a prior conviction. When properly presented it is mandatory that the court receive evidence of defendant's prior conviction."

■ While we recognize, as did the court in the New Jersey and Minnesota cases previously cited, that some textwriters [1] have criticized the rule which is embodied in § 491.050, we nevertheless conclude that the section does confer an absolute right to show prior convictions solely to affect credibility. If any change therein is to be made, it is up to the General Assembly to do so.

Finally, defendant insists that a new trial should be granted on the basis that the trial court completely failed to comply with the provisions of § 556.280, V.A.M.S., with the result that it was error not to submit the issue of punishment to the jury. This contention is based on failure of the trial court to conduct any hearing outside the presence of the jury on the issue of the existence of prior convictions which were charged in the information, and the fact that no findings of any kind were made on this issue by the court.

Section 556.280, V.A.M.S., provides in part as follows:

"If any person convicted of any offense punishable by imprisonment in the penitentiary, or of any attempt to commit an offense which, if perpetrated, would be punishable by imprisonment in the penitentiary, shall be sentenced and subsequently placed on probation, paroled, fined or imprisoned therefor, and is charged with having thereafter committed a felony, he shall be tried and if convicted punished as follows:

"(1) If the subsequent offense be such that, upon a first conviction, the offender could be punished by imprisonment in the penitentiary, then the person shall receive such punishment provided by law for the subsequent offense as the trial judge determines after the person has been convicted.

"(2) Evidence of the prior conviction, sentence and subsequent imprisonment or fine, parole, or probation shall be heard and determined by the trial judge, out of the hearing of the jury prior to the submission of the case to the jury, and the court shall enter its findings thereon. If the finding is against the prior conviction, sentence and subsequent imprisonment or fine, parole or probation, then the jury shall determine guilt and punishment as in other cases.

\*    \*    \*    \*    \*    \* "

The transcript on appeal discloses that no hearing on this issue was held outside the presence of the jury and no finding of prior convictions or applicability of the statute was made, as provided in § 556.280 (2). The only things in the transcript relative to prior convictions are the two questions and answers previously quoted in this opinion which were asked of defendant on cross-examination for the purpose of affecting his credibility.

■ In State v. Blackwell, Mo., 459 S.W. 2d 268, decided on this date by the Court en Banc, we held that § 556.280 does not require that the court's findings detail specifically each fact necessary to applica-

---

1. Griswold, The Long View, 51 ABA Journal 1017, 1021; Hunvald, Criminal Law in Missouri—Evidence of Other Crimes, 27 Mo.Law Review 544. See also Comment, Impeachment of the Defendant-Witness by Prior Convictions, in 12 St. Louis Univ.Law Journal 277, and Articles cited in the concurring opinion of Judge Jacobs in State v. Hawthorne, 49 N.J. 130, 228 A.2d 682, 691.

tion of the statute, and that a general finding that defendant had previously been convicted and that the act was applicable would be sufficient, provided the evidence received by the court on that issue sufficiently established the necessary facts. We conclude, however, that we cannot extend that situation to this case where no hearing as dictated by the statute was held and no finding of any kind has been made by the court. We are unable to say that the presence of the two questions and answers asked to impeach defendant's credibility constitute compliance with § 556.280.

However, this conclusion does not dictate a new trial, as defendant contends. Rather, the proper procedure is to send this case back to the trial court for a hearing on this question and a determination as to whether one or more prior convictions alleged in the information exist and whether the provisions of § 556.280 are applicable.

The procedure which we prescribe adequately protects the defendant's rights. It is comparable, by analogy, to the procedure which is utilized in situations wherein after trial and verdict it is determined that the trial court failed to hold a requested hearing outside the presence of the jury to determine voluntariness of a confession, or where, having conducted such a hearing, the court failed with unmistakable clarity to make a finding that the confession was voluntary. In such situations it is not necessary to direct a new trial in order to remedy the defect if, in fact, it is ultimately determined, after proper hearing, that the confession was voluntary. Accordingly, the trial court in such situations is directed to conduct a hearing on the issue of voluntariness of the confession and then to make a finding as to whether the confession was voluntary. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R. 3d 1205; Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593; State v. Ussery, Mo., 452 S.W.2d 146; State v. Stidham, Mo., 449 S.W.2d 634. Only if the confession is found not to have been voluntary is a new trial required. Likewise, in the situation

here presented, only if it is determined on remand, after hearing, that there was no prior conviction and that the Second Offender statute was inapplicable is a new trial necessary.

Consequently, the judgment and sentence are reversed and set aside and the case is remanded in order that the trial court may bring before it the defendant, with counsel, at an appropriate time, to conduct a hearing pursuant to § 556.280. After evidence is heard, the trial court shall make appropriate findings with respect to prior convictions and applicability of the statute. If the trial court finds one or more prior convictions on which defendant has been sentenced and imprisoned, fined, paroled or placed on probation in accordance with § 556.280, it may proceed to grant allocution and to render judgment and sentence. If the trial court's finding is otherwise, a new trial must be ordered for the jury then would be entitled to assess the punishment.

All of the Judges concur.