STATE of Missouri, Respondent,

v.

Gerald H. GUELKER, Appellant.

No. 59305.

Supreme Court of Missouri,
En Banc.

Dec. 13, 1976.

Rehearing Denied Jan. 10, 1977.

Norman S. London, Lawrence J. Fleming, St. Louis, for appellant.

John C. Danforth, Atty. Gen., Robert M. Sommers, Asst. Atty. Gen., Jefferson City, for respondent.

HENLEY, Judge.

Defendant, charged with operating a motor vehicle without the permission of its owner (§ 560.175, subsection 1 [1]), was found guilty by a jury and sentenced to imprisonment for three years. He appealed to the Court of Appeals, St. Louis district, which reversed and ordered him discharged. On application of the State, we ordered the case transferred to this court. We affirm.

Defendant contends that the trial court erred in overruling his motion for judgment

---

1. References to sections of the statutes are to RSMo 1969.

of acquittal filed at the close of all the evidence, because there was no evidence that he operated the motor vehicle without permission of its owner. More particularly, defendant's contention is that there was no such evidence, because Donald V. Howard, alleged owner of the vehicle and the only witness on the issue of ownership and permission vel non, testified to facts which show that he was not the "owner" at the time defendant is alleged to have operated the vehicle unlawfully.

Defendant's posttrial motions were a motion for judgment of acquittal in accordance with his trial motion for judgment of acquittal or, in the alternative, for a new trial. He calls attention to the fact that these are separate motions and that his motion for new trial does not assign as error either the overruling of his trial motion for judgment of acquittal or the insufficiency of the evidence to sustain conviction. He argues that since the evidence is not sufficient to sustain his conviction and his motion for judgment of acquittal should have been sustained for that reason, the only course open to the court is to reverse the judgment and order him discharged; that a new trial may not be ordered upon reversal in accordance with his motion for judgment of acquittal, because he asked only for judgment of acquittal and not for a new trial on the ground of insufficiency of the evidence; that to remand the case for a new trial on this ground would be to subject him to being twice put in jeopardy for the same offense in violation of rights guaranteed by the Fifth Amendment of the United States Constitution.

In *State v. Caldwell*, 434 S.W.2d 571, 574[2] (Mo.1968), the court held that a claim of error in overruling a motion for judgment of acquittal is required by Rule 27.-20(a)[2] to be raised in a motion for new trial in order for it to be preserved for appellate review; that it is not an error or matter required by Rule 28.02 to be considered although not preserved for review.

■ The contention that the court erred in overruling defendant's motion for judg-

ment of acquittal, admittedly not assigned as error in his motion for new trial, is not preserved for appellate review. *State v. McClunie*, 438 S.W.2d 267, 268[1] (Mo.1969); *State v. Nolan*, 423 S.W.2d 815 (Mo.1968). However, we may, and do, consider the contention under Rule 27.20(c). *State v. McClunie*, supra.

Patrolman James H. Wisecarver of the St. Louis Police Department testified that on July 5, 1973, he and his partner, Patrolman Theodis Johnson, saw the defendant driving a 1972 Chevrolet station wagon in a careless manner in downtown St. Louis near the Mansion House where defendant stopped; that in the course of discussing this offense with defendant, he (the officer) secured the vehicle's identification number (No. 1N45S2C 152625), had it checked, and received information that it had been stolen; that the automobile was then delivered to the police garage. Patrolman Johnson corroborated Patrolman Wisecarver's testimony.

Donald V. Howard of Dallas, Texas, testified that in April, 1972, he bought the motor vehicle involved in this case, a 1972 model Chevrolet station wagon bearing identification number 1N45S2C 152625, and that he is its owner; that he had possession of the vehicle from the date of the purchase until about January 3, 1973, when it disappeared from the driveway at his home where he had left it locked the night before; that he reported the theft to the police that morning; that he did not see the automobile again until July, 1973, when, in response to information that it was being held for him in the police garage in St. Louis, he went there, identified it as his, took possession, drove it back to Dallas, and has had possession since that date; that he does not know and did not give defendant permission to drive the automobile. Mr. Howard further testified that at the time of his purchase he registered the vehicle in his name and received a State of Texas certificate of registration; that he financed his purchase with the Republic National Bank

2. References to rules are to Supreme Court Rules.

of Dallas and gave the bank a mortgage on the vehicle; that the certificate of title to the vehicle was deposited with the bank when the mortgage was executed.

We quote those portions of Mr. Howard's testimony, developed in cross-examination, on which defendant relies as evidence that Mr. Howard was not the owner on July 5, 1973:

"Q. Was that vehicle insured?

A. Yes.

Q. Did it have—strike that—was a claim made relative to the loss of that vehicle?

A. I did not make a claim but the insurance company approached me to settle it.

Q. And, when was that done, sir?

A. Actually after the recovery of the car.

Q. And during the six months between January and July you had not been reimbursed or compensated in any way, shape or form by any insurance company?

A. No, I had not.

\* \* \* \* \* \*

Q. Do you know if the mortgage holder was reimbursed for the loss of that vehicle?

A. Yes, \* \* \* [it] was.

\* \* \* \* \* \*

Q. Do you know when that took place, sir?

A. No, I do not.

Q. Was that before July, however?

A. Yes.

Q. Do you know approximately how long before July?

A. No, sir, I do not.

Q. And, was the title deposited with the mortgage holder of that vehicle when you took out the mortgage on that car?

A. Yes.

Q. And, was it endorsed over to them for the purpose of their being reimbursed by the insurance company or was it endorsed to them at the time you took out the loan?

A. They received the title at the time of purchase.

Q. Which would have been sometime in '72?

A. Yes.

Q. And, did you assign that title to them when you took out the loan?

A. Yes.

Q. And, do you know, sir, did they then assign that title to the insurance company when they made their settlement with the insurance company?

A. Yes, they did.

Q. And, that was prior to July of 1973?

A. Yes.

\* \* \* \* \* \*

Q. \* \* \* Mr. Howard, do you know the name of the insurance company involved, sir?

A. No, I do not.

Q. That was handled by the bank that you have referred to?

A. Yes, it was.

Q. Did you then repurchase the car after you found it here in St. Louis or make some arrangements for the repurchase?

A. The insurance company gave me that option and I did repurchase the car.

Q. And, when did you do that, sir?

A. I would say approximately 60 days ago \* \* \* [on or about October 18, 1973] \* \* \*.

Q. But, then some 60 days ago or so \* \* \* sometime then in October be fair to say that you made arrangements to repurchase the vehicle from the insurance company?

A. I believe that would be close.

Q. All right. And, did they then deliver a certificate of title to you at the time that you repurchased it or did you finance it again at the time of repurchase?

A. They delivered it to my bank where I did finance the car.

Q. All right. And, that would have been, again, probably sometime on October or thereabouts of 1973?

A. Yes."

Defendant did not present any evidence.

After the close of the State's case, the court, on motion of the State claiming "surprise" and over the objection of defendant, permitted the State to reopen its case for the purpose of rebutting portions of this cross-examination testimony of Mr. Howard. The purpose of this rebuttal evidence was said to be to explain the "assignment" of title to the bank and to the insurance company and Mr. Howard's "repurchase" of the automobile from the insurance company; however, it was not available to the State before final submission of the case to the jury. In its stead, the parties stipulated to what this evidence would show, with defendant preserving his objections to the court's ruling permitting reopening of the case as well as to the admissibility of the evidence. The stipulation, communicated to the jury before final submission, is that evidence on behalf of the state "would show that in April of 1972 there was registered with the State of Texas in the name of Donald V. Howard a 1972 Chevrolet station wagon, Kingswood Estate Wagon, with the V.I.N. number 1N45S2C 152525. And that no change thereafter in the registration of that automobile shows on the records of the State of Texas."

■ In determining the sufficiency of evidence to withstand a motion for judgment of acquittal, we consider only the evidence favorable to the verdict and any favorable inferences which may be drawn therefrom, and evidence to the contrary is rejected. *State v. Townsend*, 327 S.W.2d 886, 887[3] (Mo.1959); *State v. Morris*, 460 S.W.2d 624, 625 (Mo.1970).

In *State v. Curry*, 473 S.W.2d 747, 749[6] (Mo.1971), a case involving a conviction for operating a motor vehicle without the owner's consent, the court held that "[a]ny competent evidence may be introduced to establish the fact of ownership of personal prop-erty. . . . Oral testimony that a witness is the owner of an automobile is competent, primary evidence of the fact of ownership." See also: *State v. Townsend*, supra, at 888; *State v. Morris*, supra, at 626–627.

■ The registration of a motor vehicle in Texas raises a presumption of ownership in the registrant and once established ownership is presumed to continue in the same person until a change is shown. *Pioneer Mutual Compensation Co. v. Diaz*, 142 Tex. 184, 177 S.W.2d 202, 204[5] (1944). See also: *O'Malley v. Heman Const. Co.*, 255 Mo. 386, 164 S.W. 565, 566[3] (Mo.1914).

■ As between the mortgagor of a motor vehicle and his mortgagee or the mortgagee's assignee, the mortgagor is deemed the owner under Article 6701d, subsection 10(d), Vernon's Annotated Texas Statutes. This section is identical to § 301.010(31), RSMo 1969. In this connection, the Texas Court of Civil Appeals held in *Texas Bank and Trust Co. of Dallas v. Custom Leasing, Inc.*, 402 S.W.2d 926, 929[3–5] (Tex.Civ. App., 1966) that a chattel mortgage on a motor vehicle is a lien only and title to the vehicle remains in the mortgagor; that the mortgagor retains all rights of ownership. A chattel mortgage does not give the mortgagee any right of possession or control over a vehicle in Texas; nor does the practice in Texas of mortgagees holding the certificate of title to a motor vehicle as additional security, authorized by Article 6687–1, § 32, Vernon's Annotated Texas Statutes,[3] affect the rights of the mortgagor to possession or control of the vehicle. And it follows, of course, that the mortgagee's assignment of security instruments (including a certificate of title deposited as security) would give its assignee no more rights in a vehicle than the assignor had.

■ The evidence, considered in the light of these authorities, leads us to the conclusion that Mr. Howard was on July 5, 1973, the owner of the station wagon defendant was seen driving in St. Louis that day. We so conclude notwithstanding Mr. Howard's

---

3. This section is essentially the same as a part of § 301.610, RSMo 1969.

legal conclusions, suggested by cross-examination questions, that he "assigned" the title to his mortgagee who, in turn, "assigned" before July 5, 1973, to the insurer from whom he "repurchased." Defendant makes much of the fact that Mr. Howard stated that he repurchased the vehicle from the insurer in October, 1973, and draws the conclusion that he, therefore, could not have been the owner on July 5. Mr. Howard's testimony was sufficient to support a finding that defendant's operation of the station wagon was without the owner's permission. The court did not err in overruling the motion for judgment of acquittal.

Two points briefed by defendant are allied and will be considered together. The first is that the court erred in permitting the state to reopen its case to show by Texas records the initial registration of the vehicle in Mr. Howard's name and no changes in registration thereafter. The second is that the court erred in presenting to the jury the parties' stipulation of facts.

The trial court has a rather broad discretion as to whether to permit the State to reopen its case and in the circumstances presented here we do not find an abuse of its discretion. The stipulation as to registration is corroborative merely of Mr. Howard's testimony that he did register the vehicle in his name; and, as to no change in registration thereafter, the stipulation is supportive merely of presumption existing that this registration continued to exist absent evidence to the contrary. We find no error by the court respecting these points.

Defendant next contends that the court erred in failing to submit an instruction which required a finding that he intentionally operated the motor vehicle without the owner's permission.

This case was tried and submitted before the effective date (January 1, 1974) of Missouri Approved Instructions—Criminal (MAI–CR). However, these instructions were published and circulated to the bench and bar, and their use before their effective date encouraged, all with the approval of this court. The instruction used in this case was MAI–CR 7.80, without its optional paragraph "Third"[4] negating the element of intent. The Notes on Use of MAI–CR 7.80 require that this paragraph be included so that the jury will be required to make an additional finding before it may convict, if there is evidence either that the defendant acted in good faith in the honest belief that he had legal title to the vehicle or that he had permission of the owner. However, there was no such evidence in this case. Because the court used the approved instruction, as suggested and authorized, it would have been error to fail to include paragraph "Third," as required by the Notes on Use, had there been such evidence. Inasmuch as there was not, no error resulted.

Defendant refers to *State v. McLarty*, 414 S.W.2d 315, 318[5] (Mo.1967) holding that criminal intent is an essential element of the crime proscribed by subsection 1 of § 560.175, and *State v. Crawley*, 478 S.W.2d 344, 346[3] (Mo.1972) holding that under its facts the verdict directing instruction was required to submit a finding of criminal intent.[5]

We have recognized that this case was tried before the effective date of MAI–CR and note that *State v. Crawley*, supra, would have mandated the giving of an instruction which required a finding of intent before the jury could convict. However, we do not believe that the failure to require such finding in this case was error prejudicial to the defendant. The instruction given met the requirements of MAI–CR under the facts with which we are presented. There is nothing in this record to indicate that defendant believed he had legal title to the automobile or that he had permission of the owner to drive it. A remand for a new

---

4. The approved pattern form for the third paragraph is:

 "(Third, that he did not (drive) (operate) (use) (tamper with) such vehicle in good faith in the honest belief (that he had legal title to

the car) (that he had the permission of the owner),)".

5. See also: *State v. Tate*, 436 S.W.2d 716, 718–719[3, 4] (Mo.1969).

trial would serve no useful purpose, because, under the same facts, the instruction about which defendant complains is now *required* to be given by Rule 20.02(c).

Defendant next contends that the court erred in refusing to permit him to inspect a transcript of testimony Officer Wisecarver gave to a grand jury. His motion to examine was based on claimed inconsistencies between parts of the officer's testimony at trial and his police report. The court conducted an *in camera* inspection of the grand jury testimony and concluded that although there were certain inconsistencies, they related to minor details which would not warrant disclosure.

 Defendant was not entitled as a matter of right to examine the grand jury testimony of this witness. The granting or refusal of such request lies in the discretion of the trial court and we will not reverse for refusal, unless there is a clear showing that the court thereby abused its discretion. *State v. Cusumano*, 372 S.W.2d 860, 867[8–10] (Mo.1963); *State v. Pierson*, 343 Mo. 841, 123 S.W.2d 149, 152–153[4, 5] (1938); Rule 24.24. The bare record does not disclose an abuse of discretion, nor does defendant attempt to demonstrate wherein or why his examination of this testimony was necessary to the ends of justice and for that reason there was an abuse of discretion.

 Defendant contends that the court erred in giving instruction No. 3,[6] because the " * * * instruction, taken as a whole, lessens the [State's] burden of proof, particularly since it equates 'reasonable

doubt' to a 'substantial doubt touching on the defendant's guilt and not a mere possibility of defendant's innocence.' " In this connection, he cites *State v. Davis*, 482 S.W.2d 486 (Mo.1972),[7] and relies on an opinion by Seiler, J., concurring in result only (482 S.W.2d at 489) which recognized that the instruction had been approved, but expressed the hope that the burden of proof instruction would be changed to eliminate the language that a doubt to authorize an acquittal should be "a substantial doubt touching the defendant's guilt and not a mere possibility of his innocence." This court en banc considered and rejected essentially this same contention in *State v. Scott*, Mo., 491 S.W.2d 514, 520[11], in March, 1973, before trial began in this case in December, 1973. The trial court did not err in giving the instruction.[8]

 Defendant's last point is that " * * * the court erred in imposing a sentence of three years inasmuch as such sentence was disproportionate to the offense and was based upon improper considerations."

The jury was unable to agree upon the punishment to be assessed; hence, the court assessed the punishment and sentenced defendant to imprisonment in the penitentiary for the stated number of years and denied probation.

Defendant, recognizing that the sentence imposed is within the limits of § 560.180 (maximum of five years) and should not be adjudged excessive, contends that it was

---

**6.** Instruction No. 3 reads as follows:

"You are further instructed that the indictment contains the formal statement of the charge, but is not to be taken as any evidence of defendant's guilt.

"The law presumes the defendant to be innocent and this presumption continues until it has been overcome by evidence which establishes defendant's guilt to your satisfaction and beyond a reasonable doubt; and the burden of proving defendant's guilt rests with the State.

"If, however, this presumption has been overcome by the evidence and the guilt of the defendant established beyond a reasonable doubt, your duty is to convict.

"If, upon consideration of all the evidence, you have a reasonable doubt of the defendant's

guilt, you should acquit, but a doubt to authorize an acquittal on that ground ought to be a substantial doubt touching the defendant's guilt and not a mere possibility of defendant's innocence."

**7.** He also cites *United States v. Atkins*, 487 F.2d 257 (8th Cir. 1973); *United States v. Alvero*, 470 F.2d 981 (5th Cir. 1972); and *United States v. Bridges*, 499 F.2d 179 (7th Cir. 1974), neither of which is controlling or persuasive.

**8.** The burden of proof instruction (MAI–CR 2.20) required to be given effective January 1, 1974, has been changed completely and does not contain the language claimed to effect a lessening of the State's burden.

disproportionate because it was "shocking to the moral sense," and was based upon matters improperly considered by the court. After the judge had imposed sentence he turned to "the question of probation." After denying probation the judge remarked that this was "not an easy decision"; that he disagreed with defense counsel's statement that he (the judge) should not consider the fact that defendant was a St. Louis police officer "sworn to uphold * * and to enforce the law * * * not to violate it"; that he (the judge) believed that he should take these facts into consideration as well as the fact that, although defendant did not testify, " * * * the inference was laid before the jury [by defendant] that * * * police officer [Wisecarver] was mistaken, that he [Wisecarver] took the wrong number * * * off the wrong car" and 'that there was " * * an attempt : * * * to impose upon the jury an indication that this man [defendant] wasn't operating this automobile, that the police were mistaken, that he was operating some other automobile"; that "I [the judge] regret the necessity of denying probation in a case like this but I feel that if we're going to enforce the law we're going to have to make it perfectly clear to law enforcement officials * * * [that] they're held to a very high duty."

The quoted remarks of the trial judge demonstrate clearly that the matters taken into consideration were not improper and were being considered only as affecting the decision to deny probation. The record does not support the contention that these considerations affected the sentence and made it "disproportionate"—whatever that word may mean as used here. Defendant contends that these matters considered by the trial court denied him rights guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution and Article I, § 2 of the Missouri Constitution, but he does not state or attempt to demonstrate how or in what respect those rights have been denied.

The judgment is affirmed.

All concur.